## SPROTT V. NEW ORLEANS INSURANCE ASSOCIATION.

Decided May 3, 1890.

| 53 | 215 |
|----|-----|
| 62 | 47 |
| 53 | 215 |
| 73 | 53 |
| 53 | 215 |
| f79 | 483 |
| 53 | 215 |
| f89 | 28 |

1. *Skeleton bills of exceptions—Identification of instructions.*

   If there is no denial of their identity, instructions numbered and indorsed, "Instructions for plaintiff," and left in the custody of the clerk, are sufficiently identified by a direction in a skeleton bill of exceptions for the clerk to copy "plaintiff's instructions."

2. *Insurance policy—Misrepresentation by company's agent—Warranty.*

   A policy of insurance will not be avoided by a misrepresentation in the application for insurance for which the company's agent, and not the assured, is responsible, although the policy contains a warranty of the correctness of the application.

3. *Insurance policy—Waiver of warranty.*

   A warranty in a policy of insurance that the assured will keep the books of his business in a fire-proof safe will be waived by the acceptance of an application for insurance which notified the insurer that the books would be kept elsewhere.

APPEAL from *Nevada* Circuit Court.

C. E. MITCHEL, Judge.

Sprott sued the New Orleans Insurance Association upon a policy of insurance. The facts appear in the opinion. The following are the instructions referred to therein.

Plaintiff asked the court to instruct the jury as follows:

1. "If they believe from the evidence that J. H. Van Dyck was authorized by the general agents of the company to solicit business for the company, to take and forward applications for acceptance, to deliver policies, and to collect and remit premiums thereon, and that the company paid him for his services, then he was the agent of the company, and the defendant will be bound by his acts and knowledge. And in this case if the jury find from the evidence that there were false statements or representations contained in plaintiff's application as to the situation, description or diagram of the property insured, but that the said false statements were

made by the said VanDyck without the knowledge or consent of the plaintiff, then the defendant company will be estopped and precluded from setting up such false statements or diagram as a defense to this suit.''

The court refused to give this instruction as asked, but amended it by adding the following clause: ''Unless you further find that the said diagram is carried into the policy of insurance as a warranty by plaintiff.''

The instructions given at the request of the defendant to which plaintiff objected are as follows:

1.   ''If you believe from the preponderance of testimony that the plaintiff made application to the defendant company for insurance, and that said applicant made false and fraudulent representations respecting the condition and situation of the building and property insured by falsely representing on the diagram that said building was one of three only in the same block, and each from twenty-five to forty feet apart, when in fact said block contained six or more frame buildings with only small spaces between them, and that such representations were made a warranty by the terms of plaintiff's application and policy, then you are instructed that such warranty is binding upon plaintiff, and, if false, avoids the policy, and your verdict should be for the defendant.''

2.   ''If the jury find from the evidence that the plaintiff, in making the application to the defendant company for this insurance, knowingly made, or permitted to be made, a false statement of the situation and relative position of the building insured and of the situation of the property insured therein, which statement was material to the risk and was acted upon by the company believing it to be true, then the verdict should be for the defendant unless you further find that the defendant company by its agent knew the falsity of the representations.''

6.   ''If the jury find from the evidence that the plaintiff did not keep his books and last inventory securely locked in

a fire-proof safe by night, or that he did not so keep them at all times when his store was not actually open for business, or that he did not keep them in some secure place, not exposed to a fire which would destroy the building where the goods and business were, but kept them in the same building with his goods where said books or inventory were destroyed by the fire which burned the building, then the verdict should be for the defendant."

7. "The court instructs the jury that under the pleading in this case it is not competent for the plaintiff to show that the diagram on the application for insurance and referred to therein, and also mentioned in the policy of insurance, in the plaintiff's proof of loss and in the complaint in this case of which said policy is made a part, was not made by him or his authority, but that the same is to be considered by the jury as the plaintiff's own representations, and if the same is not true in a material respect, their verdict should be for the defendant."

9. "If the jury find from the evidence that after the fire was discovered plaintiff did not use reasonable means or make reasonable efforts to extinguish the same, but willfully and negligently permitted the said fire to destroy his house and goods, when by the use of reasonable means said house and stock could have been saved, then you will find for the defendant in whole or in part, according as you may believe from the evidence that the same could have been saved in whole or in part."

10. "If the jury find from the testimony that the plaintiff warranted in his application and policy that he would so keep his books of account that in case of a fire the defendant could ascertain from said books the amount of said loss, and you further find from the testimony that he failed to do so, then you are instructed that such failure avoided the policy as to the goods, and your verdict should be for the defendant as to that extent."

11.   "If the jury find from the evidence that the defend-ant granted insurance on the plaintiff's building, based upon false and fraudulent statements, either as to location or value, knowingly made by the plaintiff, this would avoid the policy upon said building, and your verdict should be for the defendant as to said building."

14.   "The court instructs the jury that the application for insurance and the diagram thereon are made a warranty by the policy, the contract of insurance, and if the diagram is not true, then the plaintiff cannot recover whether the diagram was known to be false or not by the solicitor for the insurance."

*Feazel & Rodgers* and *R. B. Williams* for appellant.

1.   VanDyck, the *solicitor*, in all he did in the taking, filling up and forwarding the application, upon which the policy was issued, was the agent of the company, acting within the scope of his authority; he made the false diagram, and the company is bound by his acts and knowledge, and will be estopped from setting up the false diagram as a defense, or the false answers written by himself. 21 N. E. Rep., 898.

Agency will be implied where one accepts the benefit resulting from the acts of another acting ostensibly as his agent. 49 Iowa, 126; 8 How. (U. S.), 134; 2 W. & M. (U. S.), 217; 10 N. H., 538; 59 Ind., 93.

While the *fact of agency* cannot generally be established by proof of acts of the *professed* agent in the absence of evidence tending to show the principal's knowledge of such acts or assent to them; yet where the acts are of such a character and so continuous as to justify a reasonable infer-ence that the principal had knowledge of them, and would not have permitted them, if unauthorized, the *acts themselves* are *competent* to prove the agency. 78 Ala., 94; 115 Ill., 138; 11 S. W. Rep., 1016; 52 Ark., 11; 18 Pac. Rep.,

291. A policy is not forfeited when the company's own agent makes all the false statements contained in the application. 18 Pac. Rep., 291.

The rule is not changed by a stipulation in the policy that the acts of the agent shall be deemed the acts of the insured. 8 S. E. Rep., 616.

If one must suffer, it must be the company which clothed him with authority to take applications and for which he was acting, rather than the assured who acted in good faith and innocently. 8 Pac. Rep., 112; 4 Atl. Rep., 817; 1 Atl. Rep., 528. See also 16 N. W. Rep., 420; Wood on Ins., ch. 12; May on Ins., sec. 120; 10 N. E. Rep., 85; 55 Miss., 489; Wood on Ins., sec. 49; May on Ins., sec. 141; 55 Miss., 489; 18 Pac. Rep., 117, 758, 291; 28 N. W. Rep., 607; 13 Wall., 222; 21 Wall., 152; 16 N. W. Rep., 430; 8 Pac. Rep., 112; 17 N. E. Rep., 792; 71 Ill., 620; 28 N. W. Rep., 47.

When one claiming to be an agent sends an application as such agent, and a policy is issued and premiums received, the company is estopped to deny the agency. 35 N. W. Rep., 430; 13 Pac. Rep., 156.

The principal is bound by the knowledge of the agent. 29 N. W. Rep., 411; 29 N. W. Rep., 605; 40 N. W. Rep., 386; 43 Mo., 149. The rule is not changed by reason of the warranty in the policy. Appellant assumed, as he had a right to do, that the agent would act fairly and make a correct diagram. 14 Ark., 21; 11 Ark., 149.

In view of these principles, the law should have been declared as asked by appellant.

*Eben W. Kimball* and *T. E. Webber* for appellee.

1. There is no identification of the instructions in the bill of exceptions. It was a mere skeleton bill, and presents no question for the court to pass on. 45 Ark., 485.

2. There was an express warranty that he should keep

his books and inventory in an iron safe, or place where they would not be burned by a fire destroying his store. La. Superior Court, 1888; 79 Ga., 666; 17 Ins. Law Jour., p. 813.

3. The policy makes the diagram a warranty, and it clearly misstates the situation.

4. The evidence shows that VanDyck was in no sense the agent of the company till it had accepted the insurance proffered, and by so doing the company did not ratify any act he had done before and make it its own. He was a general insurance solicitor, presenting applications to any company he saw fit. He was under no contract with the company or with Adams & Boyle, its agents.

The policy fixes the manner of all waivers; they must be endorsed in writing.

HEMINGWAY, J. All errors assigned upon this appeal relate to the charging of the jury; but the appellee contends that the questions argued by counsel for appellant are not presented by the record, because the charge was not preserved in the bill of exceptions. If that contention is correct, its decision relieves the necessity of considering any other question.

A "skeleton bill of exceptions" was prepared, signed and filed, and is brought before us by certiorari. After setting out all the evidence in the cause, it continues: "And thereupon the plaintiff asked the court to instruct the jury as follows: (clerk will here copy plaintiff's instructions as asked, leaving off the amendments of the court.)" It then recites that the court refused the first prayer of plaintiff in the form submitted, but gave it after adding a clause which is set out; it also recites that the court refused the third prayer as submitted by plaintiff, but gave it after adding a clause which is set out. The transcript contains what purports to be the prayer for a charge as presented by plaintiff, but the appellee

contends that it is not identified by the call in the bill of exceptions.    It is indorsed, "Instructions for plaintiff," and is divided into paragraphs, entitled instructions one, two, three and four; it shows that amendments ·were made to the instructions as asked, which accord with the recitals in the skeleton bill.

Is the identification sufficient?    The bill calls for "instructions for plaintiff," and the transcript contains a series of instructions endorsed, "instructions for plaintiff."    The bill discloses that the judge added certain clauses to instructions numbered one and three, and the instructions thus numbered in the transcript contain the clauses so added.    The identification might be more complete; but we think the call "to copy" fairly imports that the instructions asked were in writing, and in the custody of the clerk; the indorsement on the instructions, as transcribed, correspond with the call, and the amendment by the court, recited in the skeleton bill, corresponds with that shown upon the transcript.

In the case of *Keith v. Herschberg Optical Co.*, 48 Ark., 138, the bill of exceptions was as follows:    "The defendant, to maintain the issues on his part, introduced in evidence the agreed statement of F. Moore, which is in words and figures as follows, to wit:    (Here copy Moore's statement.)"    The statement had not been signed by counsel or marked filed, but was endorsed, "F. Moore's statement," and in this answered the call; the court held it was sufficiently identified.

The instructions asked by the defendant were brought upon the bill of exceptions by the same call as those for the plaintiff; there is the same means of identification except that they were not amended by the judge; but, under the decision above cited, we are constrained to hold the identification sufficient.    If it were charged that the transcript did not in fact contain the instructions passed upon by the circuit court, we would find much difficulty in reaching this

1. Skeleton bills of exceptions. — Identification of instructions.

conclusion; but, as there is no denial of identity, marks of identification are less rigidly scrutinized.

The instructions asked by the plaintiff and those given on behalf of the defendant relate to two alleged breaches of warranty on the part of plaintiff; the first, that the diagram of the premises insured, as set out in the application, was correct, whereas it was in fact incorrect; the second, that plaintiff agreed to keep his books of account and the last inventory of his stock in a fire-proof safe at night, or in some secure place not exposed to fire which would destroy the house insured, whereas he kept them in the part of the house insured occupied by him as a dwelling, and not in a safe of the character indicated. We will consider the instructions in that order.

*2. Insurance company — Breach of warranty—Misrepresentation by company's agent.*

1. The diagram accompanying the application was made by the solicitor of the company who was authorized to take and forward applications for insurance, deliver policies and collect and remit premiums. He knew the situation of the property, and made a diagram which the plaintiff never saw. If it was false, he made it so; and it does not appear that plaintiff had any knowledge of that fact. Although the policy contained a warranty by plaintiff that the diagram was correct, there was nothing to apprise him that it was incorrect; of this it seems that he and the general agent of the defendant were equally ignorant. The fault rests with the solicitor; to whom shall it be imputed? He acted in behalf of the company, and it accepted the fruits of his work; but it is said that he was a "solicitor," and not an "agent," of the company, and that the application recited that, in writing out answers to questions in it and in preparing a diagram, he acted as the agent of the insured. For convenience in the conduct of its business, the company may make the above classification of its agencies, but it cannot disown any one by classifying them. Neither can its declaration override the facts, nor a fiction dissolve existing relations. Without inquiring into

the scope of VanDyck's agency, it is sufficient to say that in the matter of procuring the application he acted for, and was in law the agent of, the company. The insured had a right to expect that he would make a correct diagram, and to believe in accepting the policy that he had made it correctly. The knowledge that it was incorrect was chargeable to the company through its agent, while the insured knew nothing of it; it could not, having such knowledge, issue the policy and afterwards defeat liability growing out of it, by inserting in it for him the warranty of a fact which it knew to be false. *Dwelling House Ins. Co. v. Brodie*, 52 Ark., 11.

The first instruction asked by the plaintiff should therefore have been given without the amendment, and the first, seventh and fourteenth instructions asked by the defendant should have been refused.

2. The policy contains a warranty that the insured would keep the books of his business and the last inventory of his stock at night in a fire-proof safe, or in some secure place not exposed to a fire which would destroy the building insured. He kept them in the part of the building insured which he occupied as a dwelling, and not in a safe. When preparing his application, he told the solicitor that he had no safe, and would keep the books in his dwelling; and the application which is made a part of the policy contains the following question and answer: "Q. Do you agree to keep your books in an iron safe at night? A. Keep them in dwelling at night." Although the question contained no reference to any other place in which the books might be kept other than an iron safe, the answer furnishes the information that they would not be kept in such a safe, but would be kept in a designated place. Its situation with reference to the property insured was disclosed by the application, and was known to the solicitor. The company, thus advised of the purpose of the insured, without objecting to

3. Waiver of warranty in policy of insurance.

it, issued the policy, and thereby acquiesced in the purpose expressed. It would be a reproach to the law if a recovery could be defeated on such a pretext. The sixth and tenth instructions given at the request of the defendant should have been refused. The second, eleventh and ninth instructions, given at the request of the defendant, announce correctly legal principles; they should not have been given, unless the principles were pertinent to the case made by the proof.

As to that, inquiry by us would involve a useless consumption of time, which we may properly give to other causes pressing upon our attention.

For the errors indicated, the judgment will be reversed, and the cause remanded for a new trial.