HOME FIRE INSURANCE COMPANY OF OMAHA v. ELIJAH
H. GURNEY.

FILED OCTOBER 5, 1898. No. 8294.

1. **Insurance:** REFORMATION OF POLICY: EVIDENCE. Evidence stated,
and *held* sufficient to sustain a decree reforming a policy of fire
insurance.

2. ———: KNOWLEDGE OF AGENT. An agent of an insurance company,
empowered to receive and transmit applications and to receive
payment of the premium, binds the company by knowledge ac-
quired in and about the preparation of the applications and by
representations made to the insured while so doing and concern-
ing the same.

ERROR from the district court of Merrick county.
Tried below before SULLIVAN, J. *Affirmed.*

*Byron G. Burbank,* for plaintiff in error.

*W. T. Thompson, contra.*

IRVINE, C.

This was an action to recover on a policy of fire insur-
ance, coupled with a proceeding to reform the policy.
The policy, as issued, contained a promise on the part
of the insured that he would take an inventory of the
stock of goods insured at least once a year; that he
would keep books of account showing all purchases and
sales, and would keep the inventories and books locked
in an iron or fire-proof safe or vault at night and at all
times when the building described as containing the in-
sured goods was not open for business, or in some secure
place not exposed by fire which would destroy the build-
ing. The stock of goods insured was destroyed by fire.
The plaintiff had taken and kept an inventory and books
as required by the provision referred to, but he did not
preserve them in a safe or other secure place. On the
contrary, he kept them in his store, with the goods, and
they were destroyed. The reformation asked was the

elimination of the provision referred to from the con-
tract of insurance.  In the district court there was a
trial of the issues without a jury, followed by special
findings and a judgment for the plaintiff in accordance
with the averments and prayer of the petition.  The
whole controversy here relates to the correctness of this
action in reference to the prayer for reformation as re-
gards the special clause mentioned, and by the parties
styled the "iron-safe clause."

   Plaintiff had formerly a safe in his office and had a
policy in the defendant company containing the "iron-
safe clause."  The safe had, however, been removed be-
fore the present policy was negotiated.  Plaintiff testi-
fied that an agent of defendant, one Gue, called on him
with reference to a renewal of his policy.  Gue is shown
to have been merely a soliciting agent with power simply
to receive and transmit applications, and, it seems, also,
to receive payments of premiums.  When the application
was made out plaintiff told Gue that he no longer had
a safe and that he had no place to keep his books.  Gue
said that would be all right and made out the application
accordingly.  Plaintiff did not promise as stated in the
policy.  Plaintiff's wife heard the conversation and testi-
fied that she heard plaintiff state that he had no safe
and Gue replied that it made no difference in case the
company accepted the application; that plaintiff then
told Gue he kept his books in the building, and Gue said
that made no difference, it was all right to keep them
there.  Gue denied that there was any talk as to the
place of keeping the books.  In the application in evi-
dence there are questions as to whether such books were
kept, and the question "Are they kept in fire-proof safe?"
The answer is "No."  The application was made and the
premium paid November 16, 1894, and the insurance then
began.  The policy was not delivered until about De-
cember 1, and the fire occurred December 12.  On this
evidence the court based its findings.  While it is con-
flicting, and on the part of the plaintiff perhaps not very

satisfactory, we think it is sufficient to sustain the finding. If the application stood alone it would not negative the clause in the policy, because, while it indicated that the books would not be kept in a safe or vault, they might still be kept in some place where they would not be endangered by a fire which might destroy the insured property. But the evidence tends to show that plaintiff not only told Gue that he had no safe, but that he told him he had no place to keep the books, meaning, of course, no place other than his store, and that Gue said that would make no difference. The policy was only received a few days before the fire, so that there is no estoppel from claiming a reformation because of an unreasonable retention of the policy before demanding it. Plaintiff testified that he had only read the written part and a portion of the printed, and that before the fire he had not observed the "iron-safe clause." The company received and retained the premium, and does not even now yield to the theory that there was no consensus and seek a rescission.

It is argued that Gue, being only a soliciting agent, could not bind the company by any agreement prior to the policy or in conflict with its terms. It has often been held that the insurer is bound by the knowledge of its agent, so as to constitute a waiver of the strict terms of policies afterwards issued. In regard to soliciting agents the following language from *State Ins. Co. v. Jordan*, 29 Neb. 514, is peculiarly applicable: "The agents of an insurance company authorized to procure applications for insurance and to forward them to the company for acceptance are the agents of the insurers, and not of the insured, in all they do in preparing the applications or as to any representations they may make to the insured as to the character and effect of the statements so made. * * * Public policy and good faith require that the persons clothed by the insurance companies with power to examine proposed risks and fill out, receive, and approve applications for insurance shall bind their prin-

cipals by their acts and knowledge acquired by them."
In a somewhat similar case, *Home Fire Ins. Co. v. Fallon,*
45 Neb. 554, a similar conclusion was reached. The ap-
plication, so far as any information was demanded,
stated the facts. The proof tends to show that the plain-
tiff made further statements to the agent, indicating at
least an intention not to comply with any such condition,
and that the agent informed him that such facts would
be immaterial if the policy should be issued. Giving
full effect to the limitations of this particular agent's
authority, what thus occurred was within the apparent
scope thereof. In making the application the plaintiff
had a right to rely on the agent's statement as to the
meaning and effect thereof and of the consequence of
facts truthfully imparted. The plaintiff paid and the
company received the premium, both on the faith of the
agent's acts. The company is bound thereby.

AFFIRMED.

SULLIVAN, J., not sitting.