## CONLEY v. NORTHWESTERN FIRE & MARINE INS. CO.

No. 2133.    Opinion Filed October 15, 1912.

(127 Pac. 424.)

1.   **INSURANCE—Fire Policy—Pleading—Title to Indian Land.** In an action brought on a fire insurance policy, written prior to statehood in the Indian Territory, it was alleged in the petition that the defendant company knew that the fee-simple title to the land upon which the insured building was situated was in the Choctaw and Chickasaw Tribes of Indians, and not in the plaintiff, and that defendant company for a long time prior thereto had been engaged in the fire insurance business in said territory, and had full knowledge of the character of land titles therein, and that thereby the condition of the policy with reference to sole and unconditional ownership and fee-simple title in the plaintiff was waived. **Held,** that the petition stated a good cause of action, and that the court committed reversible error in sustaining defendant's demurrer to plaintiff's petition.

2.   **SAME—Waiver of Conditions as to Ownership.** Under the facts charged, the defendant company was estopped from claiming a forfeiture under the terms of the policy.

(Syllabus by Sharp, C.)

*Error from District Court, Coal County;*
*A. T. West, Judge.*

Action by W. J. Conley against the Northwestern Fire & Marine Insurance Company. From a judgment sustaining a demurrer to the petition and dismissing plaintiff's cause of action, he brings error. Reversed and remanded, with directions.

*C. M. Threadgill* and *George Trice,* for plaintiff in error.

*Burwell, Crockett & Johnson,* for defendant in error.

Opinion by SHARP, C.    December 28, 1908, plaintiff brought suit against the defendant in the district court of Coal county on a certain policy of fire insurance issued and countersigned August 28, 1907, by the local agent of the defendant company at Coalgate, Ind. T.    The petition alleged that the building insured by the terms of said policy was totally destroyed by fire September 4, 1907.    A copy of the policy, marked as an exhibit,

was attached to plaintiff's petition. Among the stipulations found in the policy is the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

Paragraph 5 of the petition, after referring to the foregoing stipulation, in part is as follows:

"Which said condition defendant waived in the following manner: That at the time plaintiff made application to the agent of the company for the contract of insurance herein sued upon he fully advised said agent of the nature of his title to the building insured and the land and ground upon which said building was located, and. that the building and ground upon which said building was located was situated in the Indian Territory, and that defendant well knew that the fee-simple title to the ground upon which the said building was situated was in the Choctaw and Chickasaw Tribes of Indians, and not in this plaintiff. That at the time the defendant made the contract of insurance herein sued upon, and for a long time prior thereto, it had been engaged in the business of insuring property in the Indian Territory, and had full knowledge of the fact that the fee-simple title to practically all the land in the Indian Territory was not in the individual citizens of said Territory, or in those whom defendant contracted to insure, but was in the Choctaw and Chickasaw Tribes of Indians, subject to approval of U. S. of America," etc.

The defendant demurred to the petition, charging, first, that the petition, and each and every paragraph thereof, failed to state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant; and, second, that the fifth paragraph of said petition failed to state facts sufficient to constitute a waiver of the provisions of the policy. Counsel for defendant in error cite and rely upon the following cases, which they claim are controlling of the question presented: *Liverpool, London & Globe Insurance Co. v. T. M. Richardson Lumber Co.,* 11 Okla. 585, 69 Pac. 938; *Deming Investment Co. v. Shawnee Fire Insurance Co.,* 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607; *Sullivan v. Mercantile Town Mutual Insurance Co.,* 20 Okla. 460, 94 Pac. 676, 129 Am. St. Rep. 761; *Northern Assurance Co. v.*

*Grandview Building Association,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; *Phoenix Ins. Co. v. Ceaphus,* 29 Okla. 608, 119 Pac. 583. After reference to that provision of the policy which provides that "no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions and conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy of insurance exist or be claimed by the insured unless so written or attached," it is contended that by the terms of said provisions, as construed in the foregoing cases, the demurrer to the petition was properly sustained. But counsel are clearly mistaken in the position assumed by plaintiff. The petition charged that the defendant at the time well knew that the fee-simple title to the ground upon which said building was situated was in the Choctaw and Chickasaw Tribes of Indians, and not in the plaintiff. The question was one not of notice to the local agent of the defendant company, but of notice to the company itself. The petition further charged that at the time the defendant entered into the contract of insurance, and for a long time prior thereto, it had been engaged in the fire insurance business in the Indian Territory, and had full knowledge of the fact that the fee-simple title to practically all the lands in the Indian Territory was not in the individual citizens of said territory, nor in those whom defendant contracted to insure, but; on the other hand, was in the Choctaw and Chickasaw Tribes of Indians, and that by its conduct in the premises defendant waived the condition with reference to unconditional and sole ownership, and was estopped from pleading said stipulation or condition in bar of a recovery. For the purposes of the demurrer, the truth of the allegations of the petition stands admitted.

In *German-American Insurance Co. v. Paul,* 5 Ind. T. 703, 83 S. W. 60, the exact question here presented was decided by the

United States Court of Appeals for the Indian Territory, where
Clayton, J., after discussing the title to the lands of the Five
Civilized Tribes, including that of the Cherokee Nation, said:

"And up to the passage of the act of June 28, 1898, c. 517,
30 Stat. 495, entitled 'An act for the protection of the people of
the Indian Territory, and for other purposes,' nearly four years
after the execution of the policy of insurance sued on in this case,
the United States had not given its consent, by treaty or otherwise,
to the Cherokee Nation to alienate any of its lands; and there-
fore, by public law, known to all the parties to this suit, it was
impossible for any white man or individual Indian to own the
fee to any land in the Cherokee Nation. Hence, if it be true that
this impossible stipulation rendered the whole policy void, when
this company came into the Indian Territory seeking the business
of the people, and in exchange for the premium paid to it pre-
sented to them such a policy, knowing that it would bind them
to no duty, and imposed upon them no obligation, should it not,
in good conscience, either have run the pen through this printed
stipulation, or have refused altogether to issue the policy? This
was most assuredly its duty, and, having failed in it, and having
made no offer to return the premium, the company is now es-
topped from setting up this clause as a defense. . The probable
truth is that the parties considered it as a nullity. That the de-
fendant so regarded it we gather from the following somewhat
apologetic statement of the company's counsel in their brief.
They say: 'This question, as a matter of fact, should have been
taken from the jury entirely, because, as we contend, under the
unmistakable proof, this plaintiff could not have been the owner,
under any circumstances, of improvements on the public domain
of the Cherokee Nation. This is no effort to get around, upon
a technicality, the payment of a just and proper loss of property
destroyed, which was situated upon the public domain of the
Cherokee Nation. The peculiar conditions existing at that time
in the territory were well known to the insurance companies, and
they wrote insurance in the light of the knowledge of these con-
ditions; and not any one of them has ever at any time attempted
to avoid the payment of a policy honestly obtained and written
upon improvements properly owned upon such public domain.'
If the peculiar conditions existing at the time in the territory were
well known to the insurance companies, and they wrote insurance
in the light of the knowledge of those conditions, can they now be
heard to say that they have been misled to their injury by a re-
tention in the policy of a clause known to them at the time to be
totally inapplicable and inconsistent with those conditions, and

one which, if retained in their policies, would absolutely prevent them from doing any legitimate business in this territory? This policy was printed by the company. It was one of their usual forms. They put in the impossible clause. It was an instrument prepared by them, and presented to the insured with the implied understanding, at least, that it was correct, and not a mere invitation to folly, or a bid for money without consideration. The clause was for their benefit. They received the premium, and have made no tender of it back to plaintiff. Under such circumstances, the company is estopped to set up the clause of the policy creating the forfeiture. The contention now made by the company resolves itself into this; 'We are a fire insurance company. We desire to do business with the people of the Indian Territory. Under the law of this territory, no person can hold the fee-simple title to the lands upon which their buildings stand. Our printed form of policy contains a provision that the assured must be the owner of the land in fee simple, and, if not, he forfeits all rights under it. We must, therefore, either change our form of policy, or present to the people of that territory one void as to them, and, because of our superior knowledge of the fact, fraudulent as to us; but, notwithstanding this fact, we will insure under them, and in case of loss we will honestly pay it [an admission that you did not rely on it, and one which strikes it out of the contract], or we will retain the premium, and not pay the loss [an admission of fraudulent intent, which estops you from setting up the forfeiture clause as a defense].' So, in either event, the policy must be construed as if the provision had not been written into it. The very statement of the proposition condemns it. No reason can be given, and the defendant company has not attempted it, why, as to the policies intended to be used in the Indian Territory, such a provision should have been inserted in them. They might as well have required that the insured should have had a fee-simple title to Paradise, or Hades, as the one inserted. Both would be considered by the courts as irrelevant to the contract, and immaterial, and of no binding effect."

So far as we are advised, no appeal from this decision was ever prosecuted. At least, it was never reversed, and was the law in the Indian Territory both at the time the contract of insurance in the case was entered into, and of the subsequent loss, and is not in conflict with any former decision of this court, but instead was cited with approval in *Arkansas Insurance Co. v. Cox,* 21

Okla. 873, 98 Pac. 552, 20 L. R. A. (N. S.) 775, 129 Am. St. Rep. 808, in which it was said:

"The law will not permit it [the insurer], with full knowledge of the condition of the legal title to the land on which the insured's property was located, to accept the application and premium note given by the insured in payment of the premium on the policy, and to insert in the policy a provision contrary to the conditions of the title as represented by the application, by which it may defeat the right of recovery in case of loss"

—citing *German-American Insurance Co. v. Paul, supra,* and *Allen v. Phoenix Assurance Co.,* 12 Idaho, 653, 88 Pac. 246, 8 L. R. A. (N. S.) 903, 10 Ann. Cas. 328.

To have permitted fire insurance companies to carry on their business in the Indian Territory with full knowledge of the law with reference to titles to lands therein, and to defeat a recovery on a policy of insurance after loss sustained, would render such contracts of indemnity in multitudes of cases, not a protection against loss, but instead a delusion and a snare to the victims of premeditated cunning. *Phoenix Assurance Co. v. Bowdere,* 67 Miss. 620, 7 South. 596, 19 Am. St. Rep. 326; *Capital City Insurance Co. v. Caldwell Bros.,* 95 Ala. 79, 10 South. 355.

We are not unmindful of the·change in the law pertaining to the titles of lands in the Choctaw Nation, enacted since the decision in *German-American Insurance Co. v. Paul, supra.* The petition, however, charged that the title to the land upon which the building destroyed was situated was, and that the defendant company knew it to be, in the Choctaw and Chickasaw Tribes of Indians, and brought the case within the rule announced in *German-American Insurance Co. v. Paul, supra.* We know judicially that by a treaty of the Choctaw and Chickasaw Nations individual titles were obtainable in many, if not all, the government town sites in the Indian Territory at the time that the policy of insurance was written. On the other hand, we do not know the condition of the title to the lot in question. It may or may not have been in the Choctaw and Chickasaw Nations at the time the policy was written. It was alleged in the petition that it was in said nations, and we are considering a demurrer to this petition, and not anticipating what the facts may develop

upon a trial. The question presented is not altogether a new one, although the authorities announcing the rule are limited in number. In *Allen v. Phoenix Assurance Co., supra,* it was held that where the insurance policy contains a clause like that here presented, and it is shown that the property insured was situated upon a government homestead, under a claim by the insured in which the legal title remained in the United States government, and on which final proof was not made until after the loss by fire, there was not such a failure of title as to defeat the right of recovery under this stipulation as to ownership.

We have considered the only ground of demurrer discussed by counsel in their briefs. The case is one readily distinguishable from the former decisions of this court reviewed and considered in *Des Moines Insurance Co. v. Moon,* 33 Okla. 437, 126 Pac. 753. It was therefore reversible error for the trial court to sustain defendant's demurrer to plaintiff's petition.

The cause should be reversed and remanded, with directions to overrule the demurrer to plaintiff's petition.

By the Court: It is so ordered.