## NORTH RIVER INS. CO. OF NEW YORK v. O'CONNER.

No. 7258—Opinion Filed July 11, 1916.

On Rehearing, May 22, 1917.

(164 Pac. 982.)

**Insurance—Fire Insurance—Knowledge of Agent—Iron Safe Clause—Estoppel.**

The local agent of a fire insurance company having power to accept a risk and countersign and deliver a policy, with full knowledge that assured has no fireproof safe, but at the time was keeping and purposed thereafter to keep his books and inventories in the same building with the insured property at night, represented both before and after the execution and delivery of the policy that, if the assured slept and continued to sleep in said building, it would be unnecessary to keep such books and inventories tin a fireproof safe or at some other place at night, but the fact that assured slept in the building was sufficient compliance with the terms of the policy. Relying upon such representations, assured paid the premium, accepted the policy, and kept his books and inventories at night in the building where he slept, and was sleeping when fire communicated' from another building destroyed the property insured, together with his books and inventories. Held, that the knowledge of the agent was the knowledge of and binding upon the principal; and, having under such circumstances received and retained the premium, recognizing the existence and validity of the contract until loss had occurred thereunder, that notwithstanding the provisions of the policy requiring that such books and inventories be kept at night in a fireproof safe or at some other place not exposed to fire which would ignite or destroy such building, and in case of loss be produced for inspection, and that no officer or agent could waive any provision or condition of the policy, the company will not be permitted to escape liability by denying the integrity and repudiating the acts of its agent, but is estopped to invoke in avoidance the very thing such agent represented to be compliance with the contract.

(Syllabus by Bleakmore, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Pat O'Conner against the North River Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Wilson & Tomerlin, for plaintiff in error.

Scothorn, Caldwell & McRill, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Oklahoma county by Pat O'Conner to recover

against the North River Insurance Company of New York on a standard form policy issued by it insuring him against loss or damage by fire to a certain stock of merchandise in the sum of $1,000. The parties appear and are referred to here as in the trial court. Plaintiff recovered, and defendant has appealed. Fire originating in another building was communicated to that in which the stock covered by the policy was situated, causing loss of more than $5,000. The policy contained what are commonly known as the "inventory, book warranty, and iron safe clauses," and provides:

"The assured will keep such books and inventories, and also the last preceding inventory, securely locked in a fireproof safe at night and at all times when the building mentioned in this policy, or the portion thereof containing the stock described therein, is not actually open for business; or, failing in this, the assured will keep such books and inventories at night, and at all such times, in some place not exposed to fire which would ignite or destroy the aforesaid building; and in case of loss the assured specifically warrants, agrees and covenants to produce such books and inventories for the inspection of said company.

"In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon. * * *

"This policy is made and accepted, subject to the following stipulations and conditions together with such other agreements or conditions as may be indorsed herein, or added hereto, and no officer shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provision and condition, no officer, agent or representative shall have such power or be deemed to have held or waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privileges or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

"This policy shall not be valid until countersigned by the duly authorized agent of the company at Geary, Okla., this 23d day of November, 1912.        H. G. Bailey, Agent."

It is apparent that the policy sued on was issued in blank form, signed by the president and secretary of the company, and filled in, countersigned, and delivered by its agent. The assured failed to comply with the provisions of the "iron safe clause," and his inventory and books were destroyed with the stock of merchandise. It is pleaded and proved that with specific knowledge of the fact that plaintiff had no fireproof safe in which to keep his books and inventories, and did not intend to keep same at some other place not exposed to fire which might ignite or destroy the building in which the insured property was located, but, on the contrary, purposed to keep such books and inventories at night in said building, where he and his wife slept, the agent of defendant company represented to plaintiff, both before and after the complete execution and delivery of the policy, that if he and his wife slept and continued to sleep in said building, he would not be required to keep his books and inventories in a fireproof safe, or at some other place at night; that the fact of his sleeping in such building was a sufficient compliance with the terms of the policy; that plaintiff relied upon such representations and was induced thereby to accept the policy, pay the premium therefor, and keep his books and inventories in such building at night where he and his wife continued to sleep.

The question presented for our consideration is whether the knowledge and representations of its local agent who was authorized to issue the policy are binding upon the defendant.

In Western Nat. Ins. Co. v. Marsh, 34 Okla. 414, 125 Pac. 1094, 42 L. R. A. (N. S.) 991, where hundreds of authorities are collated, an action on a policy containing the provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy"

—it was held:

"When a local agent of a fire insurance company, who has the power to accept a risk and deliver the policy of insurance, at and prior to the time of the delivery of the policy, is advised and has full knowledge of the fact that other insurance upon the property is in force, and with that knowledge accepts the premium and delivers the policy, such policy is binding upon the company, notwithstanding the fact that it contains a provision prohibiting the existence of concurrent insurance without written consent thereto indorsed on the policy, and notwithstanding it contains a provision that none of the company's officers or agents can waive any of its provisions, except in writing indorsed on the policy."

And in the body of the opinion it is said:

"* * * If, therefore, this agent have authority to make the contract of insurance, and authority to indorse thereon the consent of the company to the existence of other insurance, it seems to us that when he is advised of this other insurance, and has full

knowledge thereof, and executes and delivers the contract and receives the premium from the insured, the company is bound by his knowledge, and that it is immaterial whether we call it a waiver or an estoppel, or any other name."

In Germania Fire Ins. Co. v. Barringer, 43 Okla. 279, 142 Pac. 1026, it is held:

"Where the local agent of a fire insurance company, who has power to accept the risk and deliver the policy of insurance, at and prior to the time of its delivery in renewal of another policy has knowledge of the fact that, intermediate the time of the issuance of the original and renewal policy, the title to the property whereon the insured building was located had changed, assuming that fact to be material to the risk, and that the insured failed to mention that fact at the time of the delivery of the renewal policy, held that, after having received the premium and delivered the policy, the same is binding upon the company, notwithstanding the fact that it contains a provision that none of the company's officers or agents can waive any of the provisions, except in writing indorsed on the policy."

In Springfield Fire & Marine Ins. Co. v. Halsey, 52 Okla. 469, 153 Pac. 145, it is held:

"When a local agent of a fire insurance company, who has the power to accept a risk and deliver the policy of insurance, at and prior to the time of the delivery of the policy is advised and has full knowledge of the fact that a portion of the property insured is incumbered by a chattel mortgage, and with that knowledge accepts the premium and delivers the policy, such policy is binding upon the company notwithstanding it contains a provision that none of the company's officers or agents can waive any of its provisions, except in writing indorsed on the policy."

In Conley v. Northwestern Fire & Marine Ins. Co., 34 Okla. 749, 127 Pac. 424, it is held:

"In an action brought on a fire insurance policy written prior to statehood in the Indian Territory, it was alleged in the petition that the defendant company knew that the fee-simple title to the land upon which the insured building was situated was in the Choctaw and Chickasaw Tribes of Indians, and not in the plaintiff, and that defendant company for a long time prior thereto had been engaged in the fire insurance business in said territory, and had had full knowledge of the character of land titles therein, and that thereby the condition of the policy with reference to sole and unconditional ownership and fee-simple title to the plaintiff was waived. Held, that the petition stated a good cause of action, and that the court committed reversible error in sustaining defendant's demurrer to plaintiff's petition. Under the facts charged, the defendant company was estopped from claiming a forfeiture under the terms of the policy."

See, also, Rochester German Ins. Co. v. Rodenhouse, 36 Okla. 378, 128 Pac. 508.

In the instant case the insurer appointed an agent, vouching, impliedly at least, for his competency and trustworthiness, who, with full knowledge of all the facts which might be, and now are, insisted upon to avoid the same, completed the execution and delivered the policy in suit to the assured who, relying upon the truth of the representation of such agent, was induced thereby to pay the premium, accept the policy, and pursue a course of conduct conformable to such representations, believing himself indemnified. In such circumstances, where the company has received and retained the premium recognizing the existence and validity of the contract until loss has occurred thereunder, it will not be thereafter permitted to escape liability by denying the integrity, and repudiating the acts of the agent. The company is estopped to invoke in avoidance the very thing its agent represented to be compliance with the contract.

In Niagara Fire Ins. Co. v. Brown, 123 Ill. 356, 15 N. E. 166, it is held:

'A waiver by an insurance agent duly authorized to issue and deliver policies and receive premiums of the conditions of a printed slip, attached to the policy and signed by the agent alone, and providing that the policy shall be void for failure to keep the inventories and books of the assured in a fireproof safe, is binding upon the company."

See, also, Carp v. Queen Ins. Co., 116 Mo. App. 528, 92 S. W. 1137.

It will be seen from the foregoing decisions that the established rule in this jurisdiction is that the knowledge of an agent of a fire insurance company who has power to accept a risk and countersign and deliver a policy of insurance is the knowledge of and binding upon the company, and, notwithstanding provisions to the contrary in the policy, may waive compliance with certain of its terms on the part of the assured, or may estop the company to insist upon a forfeiture for failure to comply therewith. Such rule must on principle apply alike to all provisions of the contract inserted for the benefit of the company, including the "iron safe clause."

The judgment of the trial court should be affirmed.

### On Rehearing.

HARDY, J. On rehearing it is urged that the opinion by the commission has not passed upon the real question claimed to be decisive of this case, viz., that the alleged

agreement of the agent who countersigned and delivered the policy was a parol variance of a written contract, and that the opinion is in conflict with prior and controlling decisions of this court which have been overlooked. The decisions referred to are in cases where the contract of insurance was written prior to statehood, at which time the rights of the parties were determined by the rule announced by the Supreme Court of the United States in Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, which was held to be controlling, or in cases not involving insurance contracts. In all of that class of decisions affecting insurance contracts relied upon the question as to whether the court would follow the same rule was reserved with reference to contracts made after statehood. The opinion of the commission discloses that this court has declined to follow the rule in cases involving contracts made after the admission of the state. The present case is not different in principle from those cited in the opinion where the issuing agent, with authority to countersign and deliver the policy, did so with knowledge of an existing incumbrance or of concurrent insurance or of a breach of the warranty of title. The agent was informed prior to and at the time the policy was delivered that the insured possessed no iron safe, and had been in the custom of sleeping in the rear of the store building where the books were kept. When the agent, with knowledge of these facts, delivered the policy and accepted the premium, this constituted a waiver of this condition, and the company is precluded from setting up failure to comply therewith as a forfeiture of the policy. Sprott v. New Orleans Ins. Assn., 53 Ark. 215, 13 S. W. 799; Bush v. Mo. Town Mut. Ins. Co., 85 Mo. App. 155; Rudd v. Am. Guar. Fund. Mut. Fire Ins. Co., 120 Mo. App. 1, 96 S. W. 237; Phoenix Ins. Co. v. Randle, 81 Miss. 720, 33 South. 500; Mitchell v. Miss. Home Ins. Co., 72 Miss. 53, 18 South. 86, 48 Am. St. Rep. 535; Harvey v. Parkersburg Ins. Co., 37 W. Va. 272, 16 S. E. 580; Hanover Fire Ins. Co. v. Dole, 20 Ind. App. 333, 50 N. E. 772; Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 99 Am. St. Rep. 295; Home Ins. Co. v. Gurney, 56 Neb. 306, 76 N. W. 553; 3 Cooley's Briefs on Ins., 2644.

In Rudd v. American Guaranty Fund Mutual Fire Insurance Co., 120 Mo. App. 1, 96 S. W. 237, defendant claimed that the oral assent by its agent to plaintiff's keeping his books and inventories in the storeroom and exposed to destruction by a fire which would destroy the merchandise was given during the negotiations for insurance and anterior to the delivery of the policy, and that such oral agreement was superseded by the policy, which when delivered became the sole evidence of the contract. It was held that the trial court committed no error in refusing to instruct a verdict for the company, because plaintiff failed to preserve his books and inventories safe from fire, and instructing that, if he communicated to the agent the facts regarding his inability to comply with the iron safe clause, and the agent consented to waive compliance, the failure of plaintiff to comply therewith was not a defense.

Mitchell v. Mississippi Home Insurance Co., 72 Miss. 53, 18 South. 86, 48 Am. St. Rep. 535, involved the same question. The trial court refused to permit appellant to file a replication to a plea setting up a failure to comply with the iron safe clause. Her replication alleged, in substance, that when the contract for insurance was made the defendant knew that plaintiff had no safe and did not intend to procure one, and that plaintiff intended to keep her books in the store and at her dwelling house just as they were kept when the contract of insurance was made. The refusal of the court to permit this plea to be filed was held error, and in so holding the court said:

"To ask us to hold that an insurance company shall ostensibly contract for keeping an inventory and books of account in an iron safe or at some secure place apart from the premises on which the property insured is kept, and yet, with full knowledge that the insured had and intended to have no safe, and with full knowledge that such inventory and books of account had been kept and were to be continued to be kept, at the store, to receive the insured's premium as for a valid policy, the company intending to deny its validity if loss should occur, is to ask us to sanction trickery and fraud. The insurer cannot be permitted to collect premiums with full knowledge of the existence of facts which might avoid the policy, and with full knowledge of the insured's purpose to continue, in disregard of a provision working a forfeiture, to conduct the business as theretofore in such disregard. We cannot legalize by our sanction such perfidy."

The Supreme Court of Nebraska, in Home Fire Ins. Co. v. Gurney, 56 Neb. 306, 76 N. W. 553, considered a similar question. The plaintiff in that case had told the agent of defendant that he had no safe and had no place to keep the books other than his store and was informed by the agent that it would make no difference, and upon this statement the plaintiff paid and the company received the premium for the policy, and it was held that the company was bound thereby. We are not without authority upon this question in this state. While not involving the pre-

cise facts, the case of Scottish Union & National Ins. Co. v. Cornett Bros., 42 Okla. 645, 142 Pac. 315, supports the conclusion of the commission. In that case it was said that the company should be held to have waived the iron safe clause because the agents who issued the policy had knowledge that the insured had no iron safe, and for that reason kept the policy in their own safe for safekeeping for the insured, but these facts were held not sufficient to constitute a waiver of the provision for keeping the books and inventories safe from loss by keeping them in a safe place elsewhere. The policy of the law in this state is well summed up in Liverpool & London & Globe Ins. Co. v. Cargill, 44 Okla. 735, 145 Pac. 1134, in the third paragraph of the syllabus, as follows:

"Any agreement, declaration, or course of action on the part of the insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract."

We think the commission has reached the correct result, and that its opinion should be approved. When the agent, with full knowledge of the facts, accepted the premium and delivered the policy, he was acting for the company with authority to waive any provision of the policy and knowledge imparted to him was notice to the company, and with that notice and knowledge it accepted and retained the premium paid by plaintiff, and will not now be heard to urge a forfeiture of the policy because of the failure of plaintiff to comply with a provision thereof which has been waived.

The rule which defendant urges does not apply upon the state of facts here presented, and the petition for rehearing is therefore denied.

All the Justices concur.