Harry Goldberg was engaged in the jewelry business and in making personal loans on pledges of personal property as security therefor, in the city of Tulsa. The assured conducted the business of the two enterprises in the same building. Abend Blazer took the application of Harry Goldberg for the robbery and theft insurance policy sued on in this action. The agents did not write this class of insurance, and turned the application over to Brink Cramer, who were agents for the Standard Accident Insurance Company of Detroit, Mich. The insurance company caused its policy for robbery and theft insurance to be executed and delivered to Harry Goldberg. The policy named Harry Goldberg as assured. Item No. 8 of the policy reads in the following language:
"The property insured under indemnity paragraph No. 2 is jewelry store."
Item No. 9 reads in the following language:
"Insured's business is jewelry store.
Paragraph B describes the property insured and reads in the following language:
"The company shall not be liable for loss: (1) Unless the robbery is established by reasonable evidence; (2) of any property unless it belongs to the assured, or is held by him in trust, or as collateral for indebtedness to the assured, or is held by the assured in such capacity as would render him legally liable to the owner thereof for such loss of the property as is covered hereby, * * *"
On the morning of December 26th, at about 8:30 o'clock, bandits entered the store building after it had been opened for business, and by use of firearms compelled the employees of the assured to deliver to them jewelry and valuables in the custody of the assured, to the value of about $10,000.
The assured commenced his action against the Standard Accident Insurance Company on its policy for the full amount of the insurance against robbery, in the sum of $5,000. The jewelry and valuables procured by the robbers were property pledged to Harry Goldberg, and then held by him as collateral security for personal loans made to the owners of the pledged property. The petition charged that the policy covered property pledged with the plaintiff as collateral security for loans made to the owners of the property. The defendant answered that the policy covered only jewelry and valuables owned by the assured, and held by him for sale to the public in the conduct and operation of his jewelry store. It is the contention of the insurer that the making of personal loans, and taking personal property as collateral security, is not a class of business involved in the vending of jewelry through the operation and conduct of a jewelry store. The assured admits the proposition that the making of personal loans and receiving of personal property as pledges is not involved in the usual conduct of a jewelry store, but urges that it was the intention of the assured and of the agents, *Page 109 
Abend Blazer, to cover both the jewelry business and loan business by the terms of the policy. The assured points to that part of paragraph "B," as quoted above as evidence of the intention of both parties to cover the property offered for sale through the jewelry store, and that held as collateral security for loans to the owners of the property. It is said by the assured that the construction contended for by the defendant would render the phrase "or as collateral for indebtedness to the assured" meaningless, and of no force in the contract, if the view of the insurer is taken, to the effect that the policy only covered property owned by the assured for vending to the public through the jewelry store.
The trial of the cause resulted in the court instructing the jury that the lost property came within the terms of the policy, and sent the question of value to them. The jury returned its verdict for the plaintiff for the full amount sued for. The defendant has perfected its appeal, and among the several propositions assigned as error for reversal is, the contention that the policy did not cover the personal property pledged with the assured, and which was lost on account of the robbery.
An insurance policy should be interpreted by the rules which are applicable to other written contracts to ascertain the meaning and intentions of the parties as expressed by the written contract. Fidelity Casualty Co. v. Curtis Brown Co.,105 Okla. 136, 232 P. 99.
If a contract be ambiguous in its terms, the court should examine the entire contract for the purpose of declaring the meaning and intentions of the parties as expressed by the entire contract. If the court is unable to determine the meaning of the contract from its terms, by reference to the entire contract it should then hear testimony of witnesses to determine the meaning and intention of the parties as expressed by the contract. If there be dispute between the parties on any material issues of fact involved in the hearing, to determine the meaning and intention the parties sought to express by the written agreement, the question then becomes one of fact for submission to the jury under proper instructions of the court. Kansas City Southern Ry. Co. v. Whitaker et al., No. 15442,115 Okla. 212, 242 P. 220; Brooks et al. v. J. R. Watkins Medical Co., 81 Okla. 82, 196 P. 956.
Section 6723, C. O. S. 1921, reads in the following language:
"Solicitors Agents of Company: Any person who shall solicit and procure an application for insurance shall in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."
The effect of the section was to make Abend Blazer the agents of the plaintiff in error in procuring the application for the policy, as the plaintiff in error accepted the application through Brink Cramer, its representatives, and caused the policy to be issued on the application. Blazer testified in the trial of the cause that Harry Goldberg desired the policy to be written on the jewelry and merchandise sold through the jewelry store, and also on the property received by Goldberg as pledges to secure loans to the owners. Blazer testified that he described the property to be covered by the policy as "jewelry and loan business." The application upon which the policy was written was not introduced in evidence in the trial of the cause.
Rules of construction require us to look to all parts of the contract to determine the meaning and intention of the parties as expressed by the writing. We shall assume that all terms and provisions embodied in the written agreement were intended to be given effect by the parties, and that all terms used in the contract were employed for the purpose of expressing the meaning and intention of the parties.
The term "jewelry store," as used in the policy sued on in this action, performs a two-fold purposes — that of describing the property covered by the policy, and also establishing its location. Except for the language of paragraph "B," we would understand the phrase to mean, that the plaintiff was insured against loss of jewelry owned by him for the purpose of vending to the public through the jewelry business, if the property was located in the store building at the time of its loss. We would say that the phrase standing alone would confine the insurance to jewelry owned by the plaintiff for the purpose of selling to the public through the jewelry store, if it was lost by a robbery from the store building but this phrase must be construed in connection with the language quoted from paragraph "B." The insurance company makes the point that the taking of personal property to secure personal loans to the owners does not come within the business of operating a jewelry store. But it is equally *Page 110 
true that the operators of a jewelry store do not generally pursue the business of taking pledges of jewelry on unpaid purchase prices of jewelry sold from the store. However, under paragraph "B," it would not be material whether the pledged property was received to secure the unpaid purchase price of jewelry sold from the jewelry store, or was received in the course of the conduct of a strictly pawn brokerage business in the same building. The plaintiff is insured against the loss of property from the jewelry store held by him as collateral security for indebtedness owing to him, according to the terms of the policy.
The phrase "or as collateral for indebtedness to the insured," discloses an intention on the part of the plaintiff in error to insure the defendant in error against loss of property pledged with him to secure the payment of indebtedness owing to the assured. The policy shows upon its face that it was the intention of the plaintiff in error to go further than insuring property owned and offered for sale in the jewelry business. The plaintiff's loss came within the terms of the policy when he showed that he lost property pledged to him to secure indebtedness owing to him, and that the property was situated in the jewelry store building at the time it was taken by the bandits. Paragraph "B" requires only that the pledged property be held to secure indebtedness owing to the plaintiff, and that it be located in the jewelry store building at the time of the loss. The plaintiff would be within the terms of the policy, if he had received the pledges to secure indebtedness arising either in the conduct of the jewelry business, or the pawn brokerage business. The policy goes no farther than to require that the plaintiff held the property as a pledge to secure indebtedness owing to him. If we accept the construction contended for by the plaintiff in error, it would eliminate and render superfluous that part of paragraph "B" relating to pledged property. In view of the fact that the plaintiff was conducting a pawn brokerage business in the jewelry store at the time the policy was written, we assume that the part of paragraph "B" relating to pledged property was intended to cover personal property received by the assured in the course of the conduct of the pawn brokerage business to secure indebtedness owing to the assured.
The testimony of the agents who received the application is to the effect that the application described the property to be insured as the "jewelry and loan business" of the plaintiff. The agents who received the application were made the agents of the insurance company by the terms of the statute. We think paragraph "B," and the other provisions of the contract of insurance, expressly insure the plaintiff against loss of property owned by him for sale through the jewelry store, and property held by him as pledges for indebtedness owing to him which was received in the conduct of the pawn brokerage business.
The insurance company does not controvert the evidence of Blazer in relation to the description of the property to be insured, as set forth in the application, nor offer the application in evidence. If there was any doubt in the mind of the trial court as to whether the policy sued on covered the property lost through the robbery, the evidence of Blazer when considered in connection with the language of the insurance policy disclosed that it was the intention of the parties to insure the pledged property received in the course of the conduct of the pawn brokerage business. As there was no dispute between the parties as to the matters testified about by Blazer, who received the application for the insurance, there was no question of fact to go to the jury. The construction of the contract was one of law for the court. From the undisputed testimony, and from the entire contract, it was the duty of the court to declare the meaning and intention of the parties as expressed in the written instrument. Therefore, it became the duty of the court to instruct the jury that the property which was lost through the robbery came within the terms of the policy.
The particular complaint of the plaintiff in error in connection with the instructed verdict, is, that Blazer was not the agent of plaintiff in error in receiving the application, and that knowledge to him of the business conducted in the jewelry store building was not binding on the plaintiff in error. Section 6723, supra, operated to make Blazer the agent of the plaintiff in error in the procurement of the application for the policy. Several courts have construed the meaning of similar statutory provisions, and have reached the conclusion that information coming to the knowledge of one procuring an application for insurance, is binding on the company who receives the application and writes a policy thereon. It is the contention of the plaintiff in error that Abend Blazer were not its agents, and that the latter were not acting for it in the procurement of the policy. The decisions *Page 111 
in construing statutory provisions similar to the section quoted, have reached the conclusion that for such policies as are issued on the application, the law makes the person procuring the contract the agent of the insurer. Continental Life Ins. Co. v. Chamberlin, 132 U.S. 306, 33 L.Ed. 341; State Mutual Ins. Co. v. Green, 62 Okla. 214, 166 P. 105; Ark. Ins Co. v. Cox, 21 Okla. 873, 129 A. S. R. 808, 20 L. R. A. (N. S.) 775; Western Nat. Ins. Co. v. Marsh, 34 Okla. 414,125 P. 1094; Conley v. N.W. Fire Marine Ins. Co., 34 Okla. 749,127 P. 424; Pac. Mutual Life Ins. Co. of California v. Van Fleet (Colo.) 107 P. 1087.
We do not see a great deal of difference between the substance of the application and that of the insurance policy. It is mainly a matter of the insurance company using more technical terms than were used in the application. The agent testified that he described the property to be insured as jewelry and loan business. Paragraph "B" of the policy, insuring Harry Goldberg against loss of property held by him as pledges to secure indebtedness owing to him, is just another form of describing the property insured as a jewelry and loan business. We say this mainly for the reason that the taking of pledges of personal property to secure indebtedness is not usually an incident arising in the operation of a jewelry store.
It would serve no useful purpose to determine whether the estoppels pleaded by the plaintiff were proper in this case, as we have concluded that the lost property came within the terms of the policy. One of the contentions of the plaintiff in the trial of the cause was, that an offer to compromise on the part of the insurance company operated to estop the latter from claiming that the property did not come within the terms of the policy. The court received the evidence of the proffered compromise to support the plea of estoppel. Whether the estoppel would lie against the insurance company is not material, as the trial court finally concluded that the property came within the express terms of the policy, and instructed the jury accordingly. Therefore, the insurance company could not be prejudiced by the admission of the testimony in any event.
The judgment is affirmed.
By the Court: It is so ordered.