## SPRINGFIELD FIRE & MARINE INS. CO. v. HALSEY.

No. 5367.    Opinion Filed November 16, 1915.

(153 Pac. 145.)

1.  **INSURANCE—Fire Policy—Book Warranty Clause—Sufficiency of Compliance.** The "book warranty" clause of the standard form of fire insurance policy in use in Oklahoma is complied with by the assured if the set of books kept by him are sufficient to enable a man of ordinary intelligence to ascertain from them with reasonable certainty the amount and value of the goods destroyed.

2.  **INSURANCE—Fire Policy—Binding Effect—Acts and Knowledge of Agent—Waiver of Provision.** When a local agent of a fire insurance company, who has the power to accept a risk and deliver the policy of insurance, at and prior to the time of delivery of the policy is advised and has full knowledge of the fact that a portion of the property insured is incumbered by a chattel mortgage, and with that knowledge accepts the premium and delivers the policy, such policy is binding upon the company notwithstanding it contains a provision that none of the company's officers or agents can waive any of its provisions, except in writing indorsed on the policy.

(Syllabus by Galbraith, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Walter Halsey against the Springfield Fire & Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*F. E. Riddle* and *Harry Hammerly,* for defendant in error.

Opinion by GALBRAITH, C.    After this cause was reversed on a former appeal to this court (see 34 Okla. 383, 126 Pac. 237) the defendant in error filed an amended petition alleging, in brief, that on August 14, 1909, he was the owner of a certain stock of groceries, notions, fixtures, etc., of the reasonable value of $2,250, situated in a building on lot 12, block 187, in the city of Chickasha, Okla.; that on that date the plaintiff in error, through its local agent, in consideration of the stipulated premium, issued to him its policy of insurance on said property, insuring the same against loss or damage by fire in the sum of $1,200 for a period of one year from that date; that the fixtures so insured included a certain set of scales which had been purchased on condition, the title thereto remaining in the vendor until the purchase price had been paid; that the agent of the plaintiff in error, who issued said policy, had knowledge of such purchase and the condition of the title to said property, also of the method and manner in which the assured kept his books and conducted his business; that on August 21, 1909, without fault of defendant in error the said stock and fixtures were totally destroyed by fire, whereby the plaintiff in error became indebted to him in the amount of the policy; that he had substantially complied with all the conditions required of him under the terms of said policy, except that as to the title of the scales; and that the provision of the policy against incumbrances against the same had been waived by the agent of the company. After a motion to strike had been denied, and a demurrer over-

ruled, the plaintiff in error filed an answer consisting of a general denial, and the affirmative defense of breach of the book warranty clause in the policy, and a breach of the terms of the policy prohibiting incumbrances.   To the answer a reply was filed denying the new matter, and alleging that an inventory of the stock had been taken by the insured less than 30 days prior to the issuance of the policy, that under the terms and conditions of the policy he was not required to make another inventory until after the expiration of 11 months after its issuance and delivery, and that he was not required to keep a set of books until after the expiration of the said 11 months, and that at all times when the store was not open for business he kept his books, papers, and records in a safe place, and not within the building, and that no part of the books, papers, and records were burned.

A jury was waived, and the cause was submitted to the court for trial on the issues raised by the pleadings. The court found for the plaintiff, and the judgment and finding, in part, is as follows:

"The court further finds from the evidence that the amount of insurance upon the fixtures owned by the plaintiff at the time of the fire was the sum of $200.   And the court further finds from the evidence that the gross value of said fixtures at the date of the fire was $258.90, and that plaintiff is entitled to recover three-fourths of said value or the sum of $194.16.   The court further finds that the property covered by insurance policy sued on was totally destroyed by fire on August 21, 1909.   The court further finds from the evidence introduced herein, including the books, invoices, and records of the business kept by said plaintiff and from the testimony of the plaintiff and the insurance adjuster, that the true status of said business could be reasonably ascertained at the date of the fire, and that the plaintiff had substantially complied

with the provision known as the 'iron safe clause' in reference to keeping a set of books and the record of his business, and that the actual cash value of said stock of merchandise, exclusive of fixtures on the date of said fire, as shown from the invoice, book, inventory, and record kept of said business from the testimony of the plaintiff, and other witnesses, other than that which has heretofore been stricken out, was the sum of $1,826.18.

"The court further finds that said plaintiff held other insurance upon said stock of merchandise, exclusive of the fixtures, in the sum of $400.

"The court further finds that the three-fourths cash value of the stock of merchandise and goods at the date of the fire, exclusive of fixtures, was $1,339.72, and that the amount of which the $400 policy of insurance upon said stock would bear to the three-fourths value of said stock of merchandise and goods would be $391.52, and that the amount of the policy sued on hereon upon the stock of merchandise exclusive of fixtures, to wit, $1,000, would bear to the three-fourth value of said stock, would be $978.30. And the court finds that the plaintiff is entitled to recover herein upon the policy sued on herein in the sum of $978.38, upon the stock of merchandise and goods, exclusive of the fixtures, the sum of $194.16, upon the fixtures, making a total amount which the plaintiff is entitled to recover herein the sum of $1,172.46."

Judgment was rendered for said sum, with interest from October 21, 1909, in favor of the defendant in error and against the plaintiff in error. To review that judgment, the appeal has been duly perfected to this court. The principal assignment of error relied upon is:

"That the finding and judgment of the court are not sustained by sufficient evidence, and are contrary to law."

The "book warranty" clause in the policy, and which it is contended was breached by the assured, and on ac-

count of which he cannot recover, reads, in part, as follows:

"(2)   The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments of such stock, both for cash and credit, from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy."

Assuming that this clause required the assured to "keep a set of books," etc., showing the business transacted between the date of the last inventory taken of the stock and the fire, then the question arises:   Did the assured do this; that is, was the set of books kept by him "the complete record of the business transacted," etc., required by this clause?   The record shows that the assured conducted a community or suburban grocery store; that he sold principally for cash; that an itemized inventory of his stock had been taken on July 26, 1909; that the policy in suit was issued on August 14, 1909, and the fire occurred on the night of August 21, 1909; that he kept no cashbook; that when sales were made for cash he deposited the cash in the drawer; that when a sale was made on a weekly credit he made a duplicate slip, the original being delivered to the purchaser, and the duplicate deposited in the drawer; that when this slip was paid it was so marked and passed to the purchaser. and the cash deposited in the cash drawer; that he kept a ledger, where monthly credit accounts were entered; that when as much as $15 or $20 accumulated in the cash drawer he deposited the same in the bank; that his set of books consisted of these duplicate sales slips, the ledger, the bank passbook, and the original and duplicate invoices from the wholesale houses for goods purchased.   The testimony

further shows that no record was kept of groceries taken for family consumption, and that for the purchase of bread and pop cash was taken from the drawer, and no record made of same, and that the cash received from the sale of these articles was placed in the drawer the same as from all other sales.

The law does not require a strict compliance with the terms of the "book warranty" clause. It was said in *Scottish Union & National Ins. Co. v. Moore Mill & Gin Co.*, 43 Okla. 370, 378, 143 Pac. 12:

"It is a general rule that a substantial compliance with this warranty is sufficient. *German Amer. Insur. Co. v. Fuller*, 26 Okla. 722, 110 Pac. 763; *Shawnee Fire Insur. Co. v. Thompson*, 30 Okla. 466, 119 Pac. 985; *Home Insur. Co. v. Ballard*, 32 Okla. 723, 124 Pac. 316. Also, as stated in 2 Cooley's Briefs on Life Insurance, p. 1825, it is a general principle that the purpose of the clause is accomplished when the insured produces data from which the amount and value of goods in stock at the time of the fire can be reasonably ascertained. The same authority states, at page 1822, that the requirements of the warranty are met when the insured 'shall keep such books in such a manner as that they shall constitute a record of business transactions which a person of ordinary intelligence accustomed to accounts can understand.' See, also, *Malin v. Merc., etc., Ins. Co.*, 105 Mo. App. 625, 80 S. W. 56."

Under the above rule, and it is supported by abundant authority, the "book warranty" clause in the policy is complied with by the assured if he keeps such a set of books that a man of ordinary intelligence can from them reasonably ascertain the amount and value of the stock of goods at the time of the fire.

The trial court found from the books kept and the testimony the exact amount and value of the goods destroyed. While the evidence furnished by the books and the testimony of the witnesses possibly was not as clear and exact as might be desired, the time covered by the transaction was so short between the date of the inventory, July 26th, and the fire, August 21st, and the business transacted being modest, and not large in volume, we cannot say that the evidence was not sufficient to justify the finding of the trial court that the assured had substantially complied with the "book warranty" clause in the policy.

As to the remaining contention that the judgment appealed from cannot be sustained because of a breach of the clause in the policy against incumbrances or chattel mortgages, inasmuch as a part of the fixtures insured, namely, the scales, were held under a conditional sale contract or chattel mortgage, it is only necessary to say that this contention is not well taken for the following reasons, namely: The evidence discloses that the local agents of the plaintiff in error at Chickasha had authority to collect premiums, to countersign and deliver policies, and that before the issuance and delivery of the policy in suit the local agents were fully advised as to the exact status of the title to the property insured, including the scales, and that, with full knowledge of all the facts, the agents collected the premium, and countersigned and delivered the policy. These acts on the part of the agents constitute a waiver on the part of the company of the clause against incumbrances or chattel mortgages, and operate as an estoppel against the company setting up this ground as a defense to this action. *Insurance Company of North America v. Little,* 34 Okla. 449, 125 Pac. 1098; *Western National Insurance Company v. Marsh,* 34 Okla. 414, 125

Pac. 1094; and also *Germania Fire Insurance Co. v. Berringer,* 43 Okla. 276, 142 Pac. 1026.

We therefore conclude that the exceptions should be overruled, and the judgment appealed from affirmed.

By the Court: It is so ordered.