### SOVEREIGN CAMP W. O. W. et al. v. BOOKER.

No. 12256—Opinion Filed Oct. 30, 1923.

**1. Insurance — Fraternal Benefit Association — Agency of Local Clerk in Collections.**

Under the facts disclosed by the record and set forth in the opinion the "clerk,"

of the local camp of the Sovereign Association, in collecting monthly dues and assessments from the members, acted as the agent of the Sovereign Association and not the individual members.

2. **Same — Suspension for Nonpayment of Dues and Assessments — Custom in Collection as Defense — Fault of Collector.**

The conditions of the beneficiary certificate provided that the assured would be automatically suspended if dues and assessments were not paid before the last day of each month, but did not designate a place where such dues and assessments were to be paid. It was the custom of the agent for a number of years to call at a place fixed, definite and certain, and he always received such dues and assessments. Held, assured was justified in relying upon the agent's custom, and the neglect or omission of the agent to call for dues and assessments for the current month, according to custom, without notice to the assured that the custom had been abandoned, worked no automatic suspension of the assured, where the uncontroverted evidence discloses the dues and assessments would have been paid at the customary place whenever called for.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Frank Mathews, Assigned Judge.

Action by Harriett M. Booker against Sovereign Camp W. O. W. et al. Judgment for plaintiff, and defendants bring error. Affirmed.

Moore & West, for plaintiffs in error.

Brown, Williams, & Brown, for defendant in error.

Opinion by RUTH, C. This was an action brought in the district court of Carter county by Harriet M. Booker, defendant in error, against the Sovereign Camp of the Woodmen of the World, to recover $1,000 on a "beneficiary certificate," and for convenience, the parties will be designated as they appeared in the court below.

It appears the defendant issued a beneficiary certificate to Luther C. Booker, who was the son of the plaintiff, and plaintiff was the beneficiary therein named. In October, 1918, Luther C. Booker (hereinafter referred to as the deceased) died after being inducted into the military service of the United States during the world war. The defendant refused to pay any amount under the policy upon the ground that deceased was automatically suspended on October 1, 1918, by reason of his failure to pay the September, 1918, dues

prior to the 1st day of October. The defendant's by-laws provided for the automatic suspension of a member, provided the monthly dues were not paid during the current month, but we do not feel it is necessary to set this section of their by-laws out in full. It appears the deceased's dues were forwarded to the clerk of the defendant lodge on the 8th day of October, 1918, but the check of Mrs. Booker was by the clerk refused and the clerk took it to the Consumers Light & Power Company of Ardmore, where the deceased had been employed. The evidence discloses that all dues and assessments had been paid to and received by the defendant prior to September, 1918, that on September 6, 1918, deceased was called into the military service and entered the military service of the United States on September 9, 1918.

The uncontradicted testimony of the employes of the Consumers Light & Power Company of Ardmore, as well as the testimony of J. E. Galt, clerk of the Ardmore Camp W. O. W., discloses that it was the custom of Galt to call at the cashier's window of the Consumers Light & Power Company and there collect from the person in charge the dues of the employes of said company who were members of the Ardmore Camp, giving his receipt therefor, and such receipt showing the amount of the dues paid, together with a debit slip, was placed in the cash drawer, and deducted from such employe's salary. This had been Galt's custom, according to the undisputed testimony, for at least two years prior to September, 1918, and that upon Galt's so appearing for the purpose of collecting, the dues of the employes were paid out of the salary or wages of the employe, whether such employe was present or not. It further appears the Ardmore Camp, by resolution regularly passed, agreed to pay all dues and assessments of members of the Ardmore Camp who entered the military service of the United States.

After judgment rendered for plaintiff, this cause was regularly brought here for review.

The defendant in its brief presents three propositions, to wit:

1. "The evidence was insufficient to sustain the verdict and judgment of plaintiff under the waiver attempted to be pleaded by plaintiff that the assured had an arrangement with the clerk of the local camp to call at the office of the Consumers Light & Power Company and collect his dues.

2. "The assured, Luther C. Booker, could under no circumstances be reinstated

on October 8th, after being by the constitution and by-laws and his certificate suspended October 1st, for the reason that he was not in good health at said time.

3. "Would the payment of the September and October dues of the assured Luther C. Booker on October 8th by a former fellow employe, who at the time knew of the death of the assured, to the clerk of the local camp less than ten days after the assured had become automatically suspended, and at a time when he could have been reinstated without a written application under the provisions of the constitution and by-laws, without the payer advising the local camp that the assured was dead or sick, and the issuance by the clerk of a receipt for said dues not knowing of the illness of the assured or his death constitute a waiver on the part of the plaintiff in error, Sovereign Camp of the Woodmen of the World, to contest said policy? If so, could the waiver be available not having been specially pleaded?"

No question of the agency of Galt to collect dues was raised, as counsel was familiar with the opinion of this court in Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 Pac. 82, citing Modern Woodmen of America v. Asa Coleman, 64 Neb. 162, 89 N. W. 64, wherein it was held:

"Where a beneficiary association empowers the clerk of the local camp to collect, receipt for, remit, and report upon its benefit assessments, and the clerk acts under this authority with the knowledge and consent of all the parties, the relation of principal and agent for this purpose exists, notwithstanding the fact that the by-laws and certificates of membership contain a uniformly disregarded stipulation that the clerk of the local camp shall not be the agent of the association but shall be the agent of the local camp, which has no interest in the benefit assessments, and that the acts or omissions of the clerk shall not affect the liability or waive any of the rights of the association."

Galt being the agent of the defendant company, it is necessary for us to consider his custom in the collection of dues and determine whether the assured had a right to rely on that custom, and if the defendant company is chargeable with the agent's neglect or omission.

Nowhere in the record have we found that the assured was required to pay his monthly dues at any particular place, and the briefs do not direct our attention to any such provision, but it is provided that dues shall be paid on or before the end of each month. The assured, Luther C. Booker, being dead, no contract or agreement was established between him and his employer to pay the monthly assessments, but it was clearly established that it had been the custom of the clerk of the camp to go to the Consumers Light & Power Company to collect the monthly dues of the deceased and his fellow laborers in the employ of such company. This had been the custom for years and there is no evidence that deceased ever paid dues except through his employer's office, and his dues were always paid by his employer whether he was present or not, and the uncontroverted testimony was that if Galt had called as was his custom, the September dues would have been paid. Assured was called to the colors on September 6, 1918, and reported at the camp in Kansas on the 9th, and under all the facts and circumstances, assured had the right to assume that the clerk of the W. O. W. Camp would call for the dues as was his custom. In the absence of any express agreement as to the place at which dues are to be paid, the general practice or custom makes the law, and the duty devolved upon the clerk to so call for the dues, in the absence of any notice to the assured that the custom would be abandoned, and when the clerk fails to perform his duty, and the time elapses within which dues should be paid to prevent suspension, the clerk being the agent of the defendant, such failure, neglect or omission of the agent is imputed to the principal, and cannot work an automatic suspension of the assured without demand and refusal or notice that the custom has been discontinued.

In Knights of the Maccabees v. Johnson, supra, this court held:

"The question of the power of the society to waive a provision of its by-laws in regard to the time and place of payment of dues is so fully covered by this court in the decision rendered in Pacific Mutual Life Ins. Co. of Calif. v. McDowell, 42 Okla. 300, 141 Pac. 273, that we consider it unnecessary to go further into the question, other than to say the findings and conclusion of the trial court under consideration are fully sustained by that decision. See, also, Pacific Mutual Life Ins. Co. v. O'Neal, 36 Okla. 792, 130 Pac. 270; Shawnee Mutual Fire Ins. Co. v. Cannedy, 36 Okla. 733, 129 Pac. 865, 44 L. R. A. (N. S.) 376."

The assured (Booker), up until his death, acted in perfect good faith in the payment of his dues and assessments according to the custom of the agent, Galt, and was justified in assuming that Galt would call for the money due in September. The agent did not call on the assured's employer during September, as was his custom,

but did accept from the employer the premium due on October 8, 1918, the day of the assured's death, and testifies that he did not know Booker had left Ardmore, and gives no reason for his failure to call for the dues and assessments.

Pacific Mutual Life Ins. Co. v. McDowell, supra, turned on the question of the custom of the company's agent. The rules required payment of dues on the 1st of the month, but due to the fact that the oil field workers were paid between the 10th and 15th, and the agent did not collect until after the 15th, and this court held:

"Nor can it be argued that the company should not be held liable because of the fact that the premium was not actually paid in until after the injuries were received, because the record shows that the insured had acted in the utmost good faith in the payment of his premium and had acted wholly within the custom which the company had itself established among his fellow laborers."

We are mindful of the fact that courts have uniformly held in insurance cases where weekly or monthly payments were required to be made, and agents called at the homes or offices or places of employment of the assured to collect premiums, that a failure to so call according to custom, would not release the company from liability, and so in the collection of rents, Spencer, C. J., delivering the opinion of the court in Remsene v. Conklin, 18 Johns, (N. Y.) 447, held:

"I am inclined to the opinion, that as the rent was in this case payable at such place in the city of Albany as the lessor should, from time to time appoint, and this being for the benefit of the landlord, and to the prejudice of the tenant, that it became the duty of the landlords, if they would have the rent payable there, to make the appointment, and give notice to the defendant; and in case this appointment was not made and notice given, the consequence would be that the defendant would be absolved from delivering wheat in Albany, but still he would be bound to deliver it on the land."

Fordyce v. Hathorn, 57 N. L. 120. Walter v. Dewey, 16 Johns. (N. R.) 223:

"It is a well-settled principle, as to rent, payable in money or kind, that where the contract is silent as to the place of payment, a tender on the land is good, and it is not required of the lessee that he make tender to the person."

Defendant's second proposition must fall for the reason of the holding on the first proposition to the effect that due to the negligence or omission of the company's agent to call for the dues and assessments according to his custom, the suspension could not work automatically on September 30th due to such negligence of the agent.

This leaves for the court's consideration the third and last proposition of the defendant, to wit:

"Would the payment of the September and October dues of the assured, Luther C. Booker, on October 8th, by a former fellow employe, who at the time knew of the death of the assured, to the clerk of the local camp less than ten days after the assured had become automatically suspended, and at a time when he could have been reinstated without a written application under the provisions of the constitution and bylaws, without the payer advising the local camp that the assured was dead or sick, and the issuance by the clerk of a receipt for said dues not knowing of the illness of the assured or his death constitute a waiver on the part of the plaintiff in error, Sovereign Camp of the Woodmen of the World, to contest said policy? If so, could the waiver be available not having been specially pleaded?"

Counsel cites numerous decisions of this court to the effect that:

"A waiver must be pleaded by the party relying thereon, and, if not so pleaded, evidence to establish it is inadmissible."

With this holding we are in full accord, and if counsel had directed our attention to any clause in the assurance certificate or by-laws requiring payment to be made at a definite, fixed, and certain place, a different question would have been presented to this court, but the place of collection appearing to have been left entirely to the agent, who for years had called on assured's employer at any time suitable to the convenience of such agent, plaintiff could not plead a waiver of the condition not imposed upon the assured.

Counsel for defendant excepted to the second paragraph of the court's charge to the jury, which was as follows:

"That for a number of years prior to and up to the time when the September, 1918, assessment became due, said arrangement was kept up and followed and was relied upon by the said Booker, and that through no fault or failure on the part of the said Booker or the said Light & Power Company, the September, 1918, dues were not paid, then you should find for the plaintiff in the amount sued for, provided you further find that the said Booker is dead and that proof of the death has been furnished the defendant."

# IN RE MYERS' ESTATE 143

We think this paragraph proper, for while no definite agreement between Galt, Booker, and the Consumers Light & Power Company was proven, such an arrangement was recognized, honored and acquiesced in by the agent Galt and had been definitely established by usage and custom extending over a period of years.

This cause having been tried to a jury, and the jury having been properly instructed on the law applicable to the facts, the verdict will not be disturbed.

"When the evidence is conflicting the verdict of the jury will not be disturbed if there is any evidence reasonably tending to support the same." Melton v. Hunnicut, 89 Okla. 91, 213 Pac. 879; Stewart v. Riddle, 76 Okla. 70, 184 Pac. 443; Bass v. City of Atoka, 76 Okla. 58, 184 Pac. 573; Hays v. Azbill, 76 Okla. 313, 184 Pac. 945; Lusk v. Bandy, 76 Okla. 108, 184 Pac. 144.

Upon a careful survey of the record, we find no error of law therein, and the facts reasonably tending to support the verdict, the judgment of the trial court should, for the reasons herein stated, be affirmed.

By the Court: It is so ordered.