**SOVEREIGN CAMP W. O. W. v. PETTIGREW et al.**

No. 13494—Opinion Filed March 18, 1924.

**1. Insurance—Mutual Benefit Certificate—Estoppel to Urge Forfeiture.**

The relation between a subordinate lodge of a benefit society and the principal lodge is that of agency, and where forfeiture of the certificate of a member of the subordinate lodge is sought, it may be shown in defense that the subordinate lodge, with knowledge of the alleged cause of forfeiture, treated the insurance as in force, receiving dues and paying them over to the principal lodge.

**2. Same—Waiver of Forfeiture.**

The recognition of the continued validity of a certificate or policy, with knowledge of facts entailing a forfeiture, is a waiver of the forfeiture as a matter of law, and it is not necessary that there be a new agreement or the elements of an estoppel.

**3. Same—Retention of Premiums and Dues.**

A forfeiture incurred by the holder of a life insurance policy or contract is waived if the company, with knowledge of the facts, subsequently collects premiums, dues, or assessments on account of the contract, and retains them, without objection, until after the death of the insured.

**4. Same.**

An insurance company in possession of notice sufficient to work a forfeiture of a policy which continues to keep and retain the premiums paid until after suit is brought to enforce collection of the policy several months after the death of the insured, will be deemed to have waived the forfeitures.

**5. Same—Technical Defenses not Favored.**

The benevolent and charitable character of fraternal insurance societies does not exempt them from application of the rule that technical defenses to actions on insurance

policies are not regarded with favor by the courts.

### 6. Same—Compliance with Clause Pertaining to Military Service.

Where a policy of insurance issued by a fraternal society contains a proviso—That should the holder of this certificate so desire, he may within thirty days after entering the service of any branch of the United States Army or Navy as an officer, or as an enlisted man, notify the sovereign clerk of the home office of the society that he has entered such service of the United States Army and pay in advance to the sovereign clerk for the society the sum of $37.50 per thousand and upon so doing at the death of the member or as soon thereafter as possible the amount prescribed in the certificate shall be paid to his beneficiary or beneficiaries, and the clerk of the local camp of which the assured is a member is given notice that the assured has entered such service and is tendered the additional assessment within thirty days after such entry in the service, and continues to receive the monthly assessments and dues of such member, held, that such notice and tender is binding upon the sovereign society, and in case of death of the assured the society is estopped from denying liability.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garvin County; Geo. S. March, Judge.

Action by John J. Pettigrew et al. against Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

Moore & West, for plaintiff in error.

Bowling & Farmer, for defendants in error.

Opinion by JONES, C. This suit was instituted in the district court of Garvin county, Okla., on the 19th day of March, 1921, by the appellees, plaintiffs below, against the appellant, defendant below, to recover $750 due plaintiffs by reason of a certain policy of insurance issued to Luther Pettigrew, wherein his mother, Dotia Pettigrew, was named as beneficiary. The policy was issued on August 1, 1917, and contained a proviso that if the insured entered the United States Army or Navy and should give notice to the company of his entry within 30 days thereafter, and advance the sum of $37.50 to the society, that his insurance would thereby be maintained in full force and effect for a period of one year.

In September, 1917, the assured was inducted into the United States Army and was killed in action in France on September 26, 1918. The mother and beneficiary died subsequent thereto, and prior to the institution of this suit, leaving surviving her husband and children, plaintiffs herein.

Plaintiffs allege that within the 30 day period, as provided in said insurance policy after the entry of the assured into the service, notice was given and a tender made of the $37.50 to ―――― Boswell, clerk of the local camp of Woodmen of the World at Brady, Okla., of which camp the assured was a member, who refused to accept the money, stating that he had no orders to receive the assessment and that he would see Mrs. Pettigrew, the beneficiary, and at whose instance the tender was made and fix it up with her.

Defendant answers and denies all of the material allegations of plaintiffs' petition, and specially denies that any tender of the additional assessment was made; denies that Boswell was the agent of the Sovereign Camp of the Woodmen of the World, and alleges that he had no authority to receive the additional assessment, if in fact ever tendered, and that the Sovereign Society was in no wise bound by such notice and tender.

The cause was tried to a jury on the ―――― day of ――――, and resulted in a verdict in favor of the plaintiffs for the sum of $750, being the amount due under the terms of the policy. Defendant filed a motion for a new trial, which was overruled, and from which order and judgment the defendant appeals.

Numerous assignment of error are set forth by appellant, but the main contention of plaintiff in error is that defendants in error failed to comply with paragraph 5 of the beneficiary certificate sued on, and pleaded by them, which provision is as follows, to wit:

"In the event the holder of this certificate shall die while serving in any branch of the United States Army or Navy, either as an officer or enlisted man, outside the boundaries of the United States of America, then the amount due under this certificate shall be such proportion of the amount thereof as the period he has lived since becoming a member bears to his expectancy of life at the time of becoming such member, determined by the National Fraternal Congress Table of Mortality. Provided, that should the holder of this certificate so desire, he may within (30) days after entering the service in any branch of the United States Army or Navy, as an officer or enlisted man, notify the Sovereign Clerk at the home office of the Society, Omaha, Nebraska, United

States of America, that he has entered such service of the United States of America and pay in advance to the Sovereign Clerk for the Society, the sum of $37.50 (thirty seven dollars and 50-100 dollars) per one thousand dollars and upon so doing at the death of the member or as soon thereafter as possible the amount prescribed in this certificate shall be paid to his beneficiary or beneficiaries. Provided, further that should any member of this Society who has entered the service of the United States Army or Navy, either as an officer or enlisted man, pay the additional war risk of $37.50 per one thousand dollars per annum and die in the United States, without having served outside the boundaries of the United States of America, the total amount paid by him as war assessments shall be refunded to his beneficiary or beneficiaries"

—and urge the following proposition:

"That it was necessary for the assured, or someone for him, to have paid the additional war risk premium of $37.50 per thousand to the Sovereign Clerk of the Sovereign Camp of the Woodmen of the World at its home office in Omaha, Nebraska, as provided for in said contract."

Appellant contends that the constitution and by-laws of the order do not authorize the clerks of local camps to receive and receipt for the additional war risk premium, but admits that the clerks of local camps have authority to collect monthly assessments and deliver the beneficiary certificate when first issued, and in support of this contention cites the case of Sovereign Camp of the Woodmen of the World v. Griffin (Ga.) 117 S. E. 261, and state that this is the only authority they are able to find announcing this rule. The court in the Griffin Case refers to the case of the Woodmen of the World v. Ricks (Ga.) 106 S. E. 185, wherein the court held that local agents of the order could not waive the requirements contained in the policy, such as the one which is here involved, requiring notice and payment direct to the home office of the society, and quotes the following statement from the Griffin Case:

"The evidence considered, the court holds as a matter of law that the defendant is estopped by reason of the laws of the order as appearing in section 113 thereof, whereby the clerk of each camp is required to forward a detailed statement of the standing of the members in the camp as shall be required for the information of the sovereign clerk, upon blanks furnished for that purpose. It having been made to appear that the status of the insured as a member of the United States Army had been specifically made known to the clerk of the local camp, and that the defendant is estopped to deny proper payments having been made,

judgment is hereby rendered plaintiff, Mrs. Clyde Griffin, and against the defendant, Sovereign Camp, Woodmen of the World, for $712.50 principal, $102.21 interest to this date, and all future interest at 7 per cent. per annum, and ____$____ costs of court."

—from which it will be observed no payment or tender was made or offered, but merely the status of the insured as a member of the United States Army was made known to the clerk of the local camp, which in some respects is a different state of facts from those existing in this case; here plaintiffs alleged and offered proof of notice and a tender of payment to the clerk of the local camp.

The second proposition urged is that plaintiffs failed to make proof of the waiver pleaded, and failed to prove any waiver at all. The record discloses that two witnesses testified that a tender of the money was made to the clerk of the local camp at Brady, and that the clerk refused to accept the payment, saying he had no order to receive same, and the witness who was intrusted with the money by the mother of the deceased stated that the clerk said to tell Mrs. Pettigrew that he would see her and fix it up all right. One of the witnesses was not positive as to the date of the tender, and whether it was made within 30 days from the time, deceased was inducted into the army and said it was about a month thereafter. The other witness placed the time of the notice and tender at about three weeks after the insured entered the service. The clerk did not remember the incident, but was not willing to say that it did not occur.

These are matters of fact, and this issue was fairly submitted to the jury, and we think the verdict of the jury is conclusive on this point, there being a conflict of evidence.

Appellees cited section 94 of the constitution and by-laws of the society in support of the judgment, and of their contention that the clerk of the local camp is the agent of the society, and that his act constituted a waiver and was binding upon the society. The section is as follows:

"Sec. 94. (a) It shall be the duty of the clerk to have charge of the records, attend to the correspondence, accounts, literature of the camp, and all miscellaneous matter pertaining to its welfare.

" (b) He shall keep accurate minutes of the proceedings of every meeting and at every meeting read the names of the members who are in arrears. He shall make a statement at the first regular meeting each

month of all receipts, and a statement of all disbursements, in each and every fund carried by the camp, giving the balances in the various funds. For failure to do this the camp may declare the office of clerk vacant and call an election at the next regular meeting to fill vacancy. On the rejection of an applicant, transfer, withdrawal or introduction of a member by card, or expulsion of a member, he shall immediately notify the sovereign clerk thereof.

" (c) He shall deliver or forward to the last known postoffice address of the person paying the same, a receipt for all moneys paid due the camp, pay the same to the banker, taking his receipt therefor; attest all warrants drawn on the banker; also beneficiary certificates and other official documents and attach the camp seal.

" (d) He shall make all reports, mail or deliver all notices required. of him by the sovereign camp officers and such as are required by the laws of this society.

" (e) He shall remit all funds due and belonging to the sovereign camp to the sovereign clerk as by law provided.

"In case of failure of the clerk of the camp to comply herewith, the sovereign commander shall have the right to declare his office vacant and require the election and installation of his successor"

—and cite the case of Order of Foresters v. Schweitzer (Ill.) 49 N. E. 506, wherein the court said:

"The relation between a subordinate lodge of a benefit society and the principal lodge is that of agency, and, where forfeiture of the certificate of a member of the subordinate lodge is sought, it may be shown in defense that the subordinate lodge, with knowledge of the alleged cause of forfeiture, treated the insurance as in force, receiving dues and paying them over to the principal lodge."

In the case of Supreme Lodge K. of H. v. Davis, 58 Pac. 595, the Supreme Court of Colorado announced the following rule:

"In a mutual benevolent order, composed of a supreme lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting and forwarding assessments shall be the agent of the members of the subordinate lodge, and the supreme lodge is charged with all knowledge possessed by the agent in making the collection."

In Modern Woodmen of America v. Lane,

86 N. W. 943, the Supreme Court of Nebraska said:

"The recognition of the continued validity of a certificate or policy, with knowledge of facts entailing a forfeiture, is a waiver of the forfeiture as a matter of law, and it is not necessary that there be a new agreement, or the elements of an estoppel."

The same court, in the case of Modern Woodmen of America v. Cole, 94 N. W. 814, and 96 N. W. 154, held:

"A forfeiture incurred by the holder of a life insurance policy or contract is waived if the company, with knowledge of the facts, subsequently collects premiums, dues, or assessments on account of the contract, and retains them, without objection, until after the death of the insured."

In the case of Modern Woodmen of America v. Breckenridge, a Kansas case, reported in 89 Pac. 661, in the course of the opinion the following language is used:

"It is contended, however, that the following by-law prohibits the local camp from waiving any of the provisions of the by-laws: 'No local camp or officer thereof shall waive by-laws: No local camp nor any of the officers thereof shall have the right or power to waive any of the provisions of the by-laws of this society.' This has reference only to contractual waivers, and has no application to a waiver by operation of law resulting from the subsequent acts of the camp. Forfeitures are not favored in law, and certainly a semi-benevolent association, such as this claims for itself, should not be encouraged to rely upon forefeiture, and the court is justified in laying its hand upon any act of the association showing an intention to waive a forfeiture. The camp, with knowledge of Kelly's misconduct, continued for more than a year to receive and remit his dues, and should not now be heard to say, after his death, and after it had collected and appropriated to itself all that it was possible to get from him, that the benefit certificate has been forfeited."

According to the proof in the case at bar the clerk of the local camp was notified within 30 days that the insured had entered the military service, and the war risk assessment was tendered to him. He declined to take it, and knowing of such tender, knowing that the insured had entered the military service, and knowing all of the facts connected with the situation in detail, received the regular monthly dues and assessments for 15 months thereafter, and remitted the same to the sovereign camp where such sums were received, accepted, and retained, without objection, until after the death of the insured and claim was made for the payment of the policy.

We will now pass to the consideration of some of the cases that have been before the Supreme Court of Oklahoma on the question of authority of the clerk of the local camp to waive provisions of the policy, cited by appellee.

In the case of Sovereign Camp of Woodmen of the World v. Tam. 90 Okla. 196, 216 Pac. 660, this court said:

"Counsel for the defendant contends that in these circumstances the case is governed by Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293, and the cases following it, holding that the terms of the contract with the insured, evidenced by the constitution and by-laws of the order, so limit the power of its agents that they cannot either extend the time of payment of a benefit assessment or waive default in its payment, or reinstate a suspended member without a warranty of good health.

"On the other hand counsel for the plaintiff contend that the case is governed by the great weight of state authority, including this court, holding that the provisions for suspension from membership and forfeiture because of nonpayment of dues or assessments contained in the bylaws of a fraternal insurance society are regarded as being inserted in contracts of this nature for the benefit of the insurer, and when default in the time and manner of payment occurs, the insurer may efficiently waive the forfeiture by any course of dealing inconsistent with the claim of suspension, notwithstanding the provisions of the by-laws to the contrary.

"While there is a conflict in the authorities on the question under consideration it seems to us that the latter contention is well taken, and that this court has definitely taken its place with the great weight of state authority."

The Supreme Court of Oklahoma in the case of Sovereign Camp of the Woodmen of the World v. Chaffer, 92 Okla. 41, 217 Pac. 353, says:

"From these authorities we reach the conclusion that the clerk of Cornish Camp No. 330, W. O. W., in collecting, receipting for, and transmitting the dues and assessments of Chaffer, was acting as the agent of the sovereign camp and not as the agent of Chaffer, notwithstanding any provisions in the constitution and laws of the order to the contrary, and, being the agent of the sovereign camp, and letting dues and assessments of Chaffer pass uncollected from month to month as high as three assessments at one time, and for one month on two other occasions and then accepting the dues and assessments charged against Chaffer and issuing him a receipt therefor without requiring a written warranty of good health, and remitting the same to the sovereign camp, and there the money was retained without requiring a written warranty of good health, the clerk did exercise the power and authority to waive the certificate of good health, and such action was ratified and acquiesced in by the sovereign camp and became the waiver of the sovereign camp itself."

And in the case of Sovereign Camp of Woodmen of the World v. Booker, 93 Okla. 139, 219 Pac. 931, we find the following language:

"Under the facts disclosed by the record and set forth in the opinion, the clerk of the local camp of the sovereign association, in collecting monthly dues and assessments from the members, acted as the agent of the sovereign association and not the individual members."

This court in the case of Fraternal Aid Union v. Helms, 96 Okla. 125, 220 Pac. 915, quotes with approval an excerpt from the opinion in the case of Trotter v. Grand Lodge of Iowa Legion of Honor, 109 N. W. 1099, where the following language is used:

"The professedly benevolent and charitable character of fraternal insurance societies does not exempt them from the application of the rule that technical defenses to actions on insurance policies are not regarded with favor by the courts."

And the Supreme Court of Oklahoma in the case of Knights and Ladies of Security v. Bell, 93 Okla. 272, 220 Pac. 594, holds:

"An insurance company in possession of notice sufficient to work a forfeiture of a policy, which continues to keep and retain the premium paid until after suit is brought to enforce collection of the policy several months after the death of the insured, will be deemed to have waived the forfeiture."

From these authorities we conclude that the clerk of a local camp has authority to act for the sovereign society in the collection of all dues and assessments from the members of the local camp, and the instruction given by the court, which is assigned as error, was a fairly correct statement of the facts and the law applicable to same, and finding no reversible error in the case, we recommend that it be affirmed.

By the Court: It is so ordered.