## COMMERCIAL STANDARD INS. CO. v. REMER.

### No. 2191.

Circuit Court of Appeals, Tenth Circuit.
March 29, 1941.

R. D. Hudson, of Tulsa, Okl. (W. E. Hudson, of Tulsa, Okl., on the brief), for appellant.

John Barry, of Oklahoma City, Okl. (John W. Tyree, of Lawton, Okl., on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

The L. E. Whitham Construction Company[1] entered into a contract with the United States Department of Agriculture to construct a road in a mountainous section of the National Forest Reserve in Oklahoma. The contract required the Construction Company to carry employer's liability insurance. It secured insurance from the state of Oklahoma covering its workmen's compensation liability which does not include liability for wrongful death. Mytinger & Randel Insurance Agency of Wichita Falls, Texas,[2] was authorized by the Construction Company to secure a policy insuring it against liability for death. Commercial Standard Insurance Company[3] is a Texas corporation licensed to do an insurance business in Oklahoma. At the time the policy hereinafter referred to was issued, Eugene Whittington & Company[4] of Oklahoma City, Oklahoma, was the Insurance Company's policy-writing agent empowered to countersign its policies.

On December 27, 1934, the broker wrote the agent stating the Construction Company had been awarded the road construction contract, proposed to secure a policy from the state covering its workmen's compensation liability and desired to secure a policy covering its liability for death, and requesting advice as to the rate per hundred of the payroll and the amount of the deposit premium. On January 2, 1935, the agent wrote the broker stating the "rate for street paving, classification No. 5506, is $4.32," and the "rate for other types of road construction, classification No. 5507, is $5.86." On January 28, 1935, the broker wrote the agent authorizing the latter to issue the policy. On March 5, 1935, the Insurance Company advised the broker by telegram that the Insurance Company was binding effective that date for the Construction Company an employer's liability policy with standard limits. On the same day the broker forwarded to the agent its check for the deposit premium, requesting the agent to advise if further information was desired. On March 6, 1935, the agent filled in and forwarded to the Insurance Company an application for the policy. The policy was prepared by the Insurance Company and forwarded to the agent, who in turn forwarded it to the broker. The policy as originally written contained classification 5506. The broker returned the policy to the agent with a letter stating, from a review of the correspondence, it believed classification 5507 more properly described the business operations of the Construction Company. On March 13, 1935, the Insurance Company placed a rider on the policy incorporating therein classification 5507. It was returned to the broker on March 28, 1935.

Sec. 10533, O.S.1931, created a State Insurance Board and authorized it to supervise and regulate rates for liability insurance. Sec. 10534, O.S.1931, provides that every liability insurance company shall file with the Insurance Board a general basis schedule, showing its rates for liability insurance and all terms and conditions which in any way might affect such rates. Sec. 10537, O.S.1931, provides that no insurance company shall engage in insurance against legal liability in the state, unless the required schedule of rates has been filed, and that an insurance company shall not write insurance at a rate different from that named in the schedule, or remit or refund any portion of the rates so established, or extend to any person any privilege or inducement, except as specified in the schedule.

Sec. 10540, O.S.1931, prohibits liability insurance companies, directly or indirectly, by any rate, tariff, rebate, or other different charge, from collecting a different premium from one person than is collected from another in a like situation.

The Oklahoma Inspection Bureau is a private enterprise maintained by the insurance companies and its function is to compile the general basis schedule which sets out the rates for the risks insured. These rates are commonly referred to as "manual rates." The manual rates are filed with the Insurance Board. It is common practice for an insurance company to adopt the manual as its schedule. See American Druggists' Fire Insurance Company v. State Insurance Board, 184 Okl. 66, 84 P.2d 614, 618.

It is a fair inference from the record that at the time the policy here involved was issued, the Insurance Company had adopted the manual as its schedule.

[1] Hereinafter referred to as the Construction Company.
[2] Hereinafter referred to as the broker.
[3] Hereinafter referred to as the Insurance Company.
[4] Hereinafter referred to as the agent.

The manual contained the following classifications:

"No. 5506. Street or road construction or reconstruction, paving or repaving, surfacing or resurfacing or scraping—all kinds —including drivers, chauffeurs and their helpers.—(Clearing of right of way; earth or rock excavation; filling or grading; tunneling; bridge or culvert building; quarrying; stone crushing to be separately rated.)

"No. 5507. Street or road construction— clearing of right of way; earth excavation; filling or grading—including drivers, chauffeurs and their helpers.—(Rock excavation; tunneling; bridge or culvert building where clearance is more than 10 feet at any point or the entire distance between terminal abutments exceeds 20 feet; quarrying; stone crushing to be separately rated.)

"No. 5508. Street or road construction— rock excavation—including incidental quarrying, stone crushing or drivers, chauffeurs and their helpers—no tunneling."

Classifications 5506 and 5507 as set forth in the manual were incorporated in the policy.

Other pertinent provisions of the manual are set forth in note 5.[5]

The application stated that the Construction Company would not use explosives.

The policy contained the following provision:

"Item 11. No explosives are used, except as follows: No exceptions."

On September 4, 1935, Buddy Remer, an employee of the Construction Company, was drilling a hole in a ledge of rock in the right of way of the road under construction. His drill came in contact with an unexploded charge of dynamite, which exploded, and fatally injured him. On September 5, 1935, the Construction Company made a report of the accident to the agent disclosing that Remer's death resulted from the use of explosives in the construction of the highway. The Insurance Company investigated the accident and on September 12, 1935, advised the Construction Company that since Remer's death resulted from the use of explosives, the accident was not within the coverage of the policy.

In October, 1935, the administrator of the estate of Remer brought an action against the Construction Company to recover damages for the wrongful death of Remer. The Insurance Company undertook the defense of the action under a reservation of right to deny liability. At the time the wrongful death action was commenced, the Construction Company was, and ever since has been, insolvent. The administrator recovered a judgment

---

5 "1. This Manual of Rules, Classifications and rates governs the underwriting of Workmen's Compensation and Employer's Liability Insurance in the several states incorporated herein.

"2. The general rules shall apply to and control the writing and adjustment of all policies of such insurance, except as otherwise specified in this manual or on state exception pages.

"II. General Definitions.

"2. Employers' Liability as used in this Manual shall mean the liability imposed upon the employer by law for damages on account of personal injuries including death at any time resulting therefrom sustained by his employees by reason of accidents. The term does not include workmen's compensation or employers' liability for occupational disease.

"3. *Risk* as used in this Manual *shall mean and include the entire operations of one employer within a state.*

* * *

"The one change of an editorial nature, sufficient to warrant comment, is in respect to the word 'excluding.' In the present manual this word is the general formula for keeping particular operations out of a particular classification. Its use has proven unfortunate, in that it does not clearly indicate that *the operation excluded is to be covered under other classifications.* This leads to numerous questions particularly as to payroll division, and has at times led courts to infer that when a policy contains a classification using this term, the intent of the policy is that it does not cover the excluded operations, and therefore the carrier is not entitled to collect premium on their payroll. *Obviously this is not the correct interpretation.*

* * *

"(A) 2. Underwriting Basis. *Under no circumstances shall a policy be written to cover only a part of a specific location of a given risk, leaving another part of the same location uninsured. The entire operations of any one employer at a specific location shall be covered by a single policy. Policies shall be written upon the basis of the entire payroll for the operations of the employer which are the subject of insurance.*" (Italics ours.)

against the Construction Company for $10,000. The Insurance Company superseded the judgment. On appeal it was reversed.[6] A retrial resulted in a judgment in favor of the administrator for $15,000. It was affirmed on appeal.[7]

The administrator brought this action against the Insurance Company, as garnishee, to recover the amount due the Construction Company on the policy.

Eugene Whittington, a member of the agent's firm, testified that he had been in the insurance business 34 years; that the application was filled in and the answer to Item 11 incorporated in the policy at a time when it was believed the proper classification was 5506; that later classification 5507 was incorporated in the policy by a rider; that classification 5507 contemplates the use of explosives; that it includes rock excavation, and that rock excavation requires the use of explosives; that when classification 5507 was incorporated in the policy, it was his conclusion that explosives would be used incidentally in rock excavation; and that he knew from the location of the road that granite rock would have to be removed in the construction thereof. He further testified it was his opinion that classification 5507 covers rock excavation and the incidental use of explosives, and classification 5508 covers rock excavation by means of a separate outside plant and not mere rock excavation incidental to the clearing of rock from the right of way of a road.

Premiums were paid on the policy computed on the wages of all the employees of the Construction Company on the basis of classification 5507. While the appeal from the first judgment in favor of the administrator was pending, and after the Construction Company had completed its contract, the Insurance Company audited the payroll of the Construction Company, determined that premiums should have been paid on all the employees on the basis of classification 5508, and demanded additional premium amounting to $1,027.90. The broker assured the agent that the additional premium would be paid. However, the Construction Company failed to pay the additional premium demanded, due, no doubt, to its financial situation.

The pertinent provisions of the policy are set forth in note 8.[8]

---

6 L. E. Whitham Constr. Co. v. Remer, 10 Cir., 93 F.2d 736.

7 L. E. Whitham Constr. Co. v. Remer, 10 Cir., 105 F.2d 371.

8 "It is understood and agreed that the classifications applicable to this policy shall be as follows: [Here are set forth classifications 5506 and 5507.] * * *

"It is hereby understood and agreed that, * * * the Assured * * * shall render over his signature, on or before the tenth day after each of the following dates: March 31, 1935, and monthly thereafter, during the existence of this insurance, a statement of all remuneration paid during the preceding period to the employees covered by this policy, and will within ten days thereafter pay to the Company or its duly authorized agent a premium based upon such remuneration and computed *at the Company's rate or rates respectively applicable thereto,* * * *

"Commercial Standard Insurance Company, Dallas, Texas (Herein Called the Company) Does Hereby Agree * * *

"1. To indemnify the Assured * * * against loss arising or resulting from claims against the Assured for damages on account of * * * death accidentally suffered, or alleged to have been suffered, by any employee or employees of the Assured by reason of the business described and conducted at the locations named in said Declarations, * * * (a) while at, within or upon the Factories, Shops or Yards defined in said Declarations or the premises of the Assured or public ways immediately adjoining, * * * and (b) while elsewhere within the United States if sustained by employees of the Assured engaged as such in the business operations described in said Declarations who are required in the discharge of their duties to go off the premises, subject, however, to the following specific conditions: This policy shall not apply to any claims arising by reason of (1) injuries to and/or death of employees engaged elsewhere than at the premises in installations, removals, repairs, changes or mechanical demonstration of goods or products of the Assured unless such operations are disclosed and rated in Item 8 in said Declarations with premium provision therefor; * * *

"K. Alteration or Waiver. No * * * waiver or alteration of any provision or condition shall be valid, except such as by the terms of this policy may be subject of agreement endorsed hereon or added hereto by a duly authorized representative of the Company; nor shall notice to or the knowledge of any officer of the Company or of any agent or other person received or acquired before or after the date of this policy be held to effect a waiver, change or alteration of

From a judgment for $15,576.06 in favor of the administrator, the Insurance Company has appealed.

### I. The Coverage of the Policy.

■ The italicized provisions of the manual, set forth in note 5, and adopted by the Insurance Company and the quoted provisions of the policy manifest a clear intent on the part of the Insurance Company and the Construction Company that the policy should cover the entire operations of the Construction Company in performing the construction contract.

Under the provisions of classification 5507 if the Construction Company engaged in rock excavation not embraced within the phrase "clearing of right of way," its operations in carrying on such rock excavation were not to be excluded from the coverage of the policy, but were to be separately rated. Furthermore, the policy expressly provided for periodic audits and a premium based upon wages paid by the Construction Company under the Insurance Company's applicable "rate or rates respectively."

Moreover, if it can be said that the provisions of the policy are ambiguous, the parties by their conduct clearly indicated they construed it as covering the entire operations of the Construction Company. A premium was collected based on the wages of every employee of the Construction Company, including those engaged in rock work, and after the accident to Remer and notice thereof to the Insurance Company, its auditor made a reaudit and the Insurance Company demanded a premium on the wages of all the employees on the basis of classification 5508, and the broker assured the agent that the additional premium on that basis would be paid.

Where the parties to a contract have given it a practical construction by their conduct, such construction is entitled to great weight in determining its proper interpretation.[9]

Finally, Whittington, who had had 34 years experience in the insurance business, testified that in his opinion classification 5507 covered rock work where necessary to the clearing of right of way and the incidental use of explosives in removing the rock.

### II. The Statements That Explosives Would Not be Used.

■ The agent had authority to write and execute the policy in behalf of the Insurance Company. Under the local law of Oklahoma, knowledge acquired by such an agent, while acting within the scope of his authority, is imputed to his principal,[10] and the principal is bound by such knowledge acquired by the agent, whether communicated to the principal or not,[11] and notwithstanding a provision in the policy that none of the insurer's officers or agents can waive any of its provisions, except by a written endorsement on the policy.[12]

■ Under the local law of Oklahoma, where such an agent, while acting within the scope of his authority, acquires knowledge of facts constituting a ground for forfeiture of the policy, and the insurer thereafter continues to treat the policy as valid, it is estopped from asserting such forfeiture.[13] And where an insurer, with knowledge, actual or imputed,

any part of this contract, * * *"
(Italics ours.)

[9] Norton v. Agricultural Bond & Credit Corp., 10 Cir., 92 F.2d 348, 351, c. d. 302 U.S. 763;

Lawrence National Bank v. Rice, 10 Cir., 82 F.2d 28, 33;

Kretni Development Co. v. Consolidated Oil Corporation, 10 Cir., 74 F.2d 497, 500, certiorari denied 295 U.S. 750, 55 S.Ct. 829, 79 L.Ed. 1694.

[10] Federal Life Insurance Company v. Whitehead, 73 Okl. 71, 174 P. 784, 790, 792, 793;

Pritchard v. American National Insurance Company, 139 Okl. 248, 281 P. 774, 775;

Atlas Life Insurance Company v. Sullivan, 172 Okl. 595, 52 P.2d 28, 31;

National Aid Life Ass'n v. Clinton, 176 Okl. 372, 55 P.2d 781, 783;

United States Fire Insurance Co. v. L. C. Adam Mercantile Co., 117 Okl. 73, 245 P. 885, 888.

[11] Federal Life Insurance Company v. Whitehead, 73 Okl. 71, 174 P. 784, 790;

Knights and Ladies of Security v. Bell, 93 Okl. 272, 220 P. 594, 597.

[12] National Aid Life Ass'n v. Clinton, 176 Okl. 372, 55 P.2d 781, 784, 785;

Federal Life Insurance Company v. Whitehead, 73 Okl. 71, 174 P. 784, 790.

[13] Western National Insurance Company v. Marsh, 34 Okl. 414, 125 P. 1094, 1095-1097, 42 L.R.A.,N.S., 991;

National Aid Life Ass'n v. Clinton, 176 Okl. 372, 55 P.2d 781, 783;

Security Benefit Ass'n v. Green, 103 Okl. 284, 229 P. 1061, 1062;

Germania Fire Insurance Company v.

 

of facts constituting a ground for forfeiture, subsequently collects premiums on the policy and retains them until the loss has occurred, it is estopped from asserting the forfeiture, notwithstanding a provision in the policy that none of the insurer's officers or agents can waive any of its provisions, except by written endorsement on the policy.[14]

■ Here, the application was made by the agent and the policy was drafted and issued by the Insurance Company when it was assumed that classification 5506 was applicable. The agent knew, when the broker requested that classification 5507 be incorporated in the policy and also from the character of the work to be done and the location of the highway, that explosives would be used in removing rock from the right of way. His knowledge was imputed to the Insurance Company. It continued thereafter to collect premiums and otherwise treat the policy in full force and effect. Furthermore, after the Insurance Company had knowledge that explosives were being used and that their use had resulted in the fatal injury to Buddy Reiner, it demanded additional premiums on basis of classification 5508, assumed the defense of the action for wrongful death, and otherwise continued to treat the policy as in full force and effect. It at no time notified the Construction Company that it elected to cancel the policy because of the statements in the application and policy that explosives were not to be used. It follows that the Insurance Company is estopped to deny liability on account of such statements.

■ Moreover, the statements in the application and the policy were due to a mistake made by the policy-writing agent of the Insurance Company. The mistake was not caused by any misrepresentation of the Construction Company or its broker. Under such circumstances, the misstatement is in legal effect the act of the insurer and it is precluded from asserting the erroneous statement as a defense in an action on the policy.[15]

The judgment is affirmed.

Barringer, 43 Okl. 279, 142 P. 1026, 1028;

Springfield Fire & Marine Insurance Co. v. Halsey, 52 Okl. 469, 153 P. 145, 147;

Sovereign Camp, W. O. W. v. Pettigrew, 98 Okl. 138, 224 P. 545, 547;

Pritchard v. American National Insurance Company, 139 Okl. 248, 281 P. 774, 775;

United States Fire Insurance Co. v. L. C. Adam Mercantile Co., 117 Okl. 73, 245 P. 885, 888.

14 National Aid Life Ass'n v. Clinton, 176 Okl. 372, 55 P.2d 781, 783–785;

Western National Insurance Company v. Marsh, 34 Okl. 414, 125 P. 1094, 1095, 1096;

Germania Fire Insurance Company v.

Barringer, 43 Okl. 279, 142 P. 1026, 1028;

Springfield Fire & Marine Insurance Co. v. Halsey, 52 Okl. 469, 153 P. 145, 147;

North River Insurance Company v. O'Conner, 63 Okl. 301, 164 P. 982, 983, 984;

Atlas Life Insurance Company v. Sullivan, 172 Okl. 595, 52 P.2d 28, 31;

Sovereign Camp, W. O. W. v. Pettigrew, 98 Okl. 138, 224 P. 545, 547.

15 Knights and Ladies of Security v. Bell, 93 Okl. 272, 220 P. 594, 598;

Federal Life Insurance Company v. Whitehead, 73 Okl. 71, 174 P. 784, 792.

See, also, Higgins v. Phoenix Insurance Company, 175 Okl. 394, 52 P.2d 735, 736.