## LACKEY et al. v. OHIO OIL CO. et al.

### No. 2701.

Circuit Court of Appeals, Tenth Circuit.

Oct. 27, 1943.

J. B. Dudley, of Oklahoma City, Okl. (Dudley, Duvall & Dudley, of Oklahoma City, Okl., on the brief), for appellants.

J. H. Jarman, of Oklahoma City, Okl. (W. H. Brown, of Oklahoma City, Okl., and H. G. Ross, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Bert Lackey and Estella Lackey, his wife, executed and delivered to George Gorton an oil and gas lease on a twenty-acre tract of land in Caddo County, Oklahoma. The lease reserved one-eighth of the oil to the lessor. It contained the following provisions with respect to gas produced from the lease:

"* * * lessee covenants and agrees: * * *

"2nd. To pay the lessor Two Hundred and No/100 Dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of One Hundred & No/100 Dollars, per year, for the time during which such gas shall be used, said payments to be made each three months in advance. * * *

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operations thereon, except water from the wells of lessor."

In the year 1929, the Lackeys were divorced and Estella Lackey became the owner of a one-half interest in the twenty-acre lease. On October 7, 1941, she conveyed one-half of her royalty interest to William H. Harding.

On October 28, 1929, Ramsey Petroleum Corporation[1] acquired the lease. On February 20, 1930, Ramsey conveyed an un-divided one-half interest to Mid-Kansas Oil and Gas Company, a wholly-owned subsidiary of the Ohio Oil Company.[2] Mid-Kansas changed its name to the Marathon Oil Company.[3] On September 14, 1936, Marathon assigned its undivided one-half interest in the lease to Ohio. Ramsey continued to hold the other undivided one-half interest.

On September 13, 1930, Marathon completed a gas well on the leased premises known as Well No. 6. The total amount of natural gas produced from the well from January 1, 1932, to April 1, 1942, was 3,-795,957,000 cubic feet. Of this production, Ramsey and Ohio used 793,626,000 cubic feet off the leased premises and sold 3,-002,331,000 cubic feet.

Estella Lackey and Harding brought this action against Ohio and Ramsey for the conversion of the gas produced from such lease and sold. From a judgment in favor of Ohio and Ramsey, Estella Lackey and Harding have appealed.

In Mussellem v. Magnolia Petroleum Co., 107 Okl. 183, 231 P. 526, 527, the court construed the following royalty provisions of an oil and gas lease:

"First: To deliver to the credit of the parties of the first part (the plaintiffs herein) their heirs or assigns, free of cost, in the pipe line to which it may connect his well, the equal one-eighth part of all oil produced and saved from the lease premises.

"Second. To pay to the parties of the first part $300 each year in advance for the gas from each well, where gas only is found, while the same is being used off the premises, * * *.

"Third. To pay the parties of the first part for gas produced from an oil well, and used off the premises, at the rate of $50 per year for the time during which such gas shall be so used, said payments to be made each three months in advance.

"The party of the second part shall have the right to use free of cost gas, oil and water produced on said land, for its operation thereon, except water from the wells of first party."

The lessee, Magnolia Petroleum Company, made a contract with the National Products Company to use the casing-head gas arising from oil wells drilled on the lease to make gasoline. The lessors ac-

1 Hereinafter called Ramsey.
2 Hereinafter called Ohio.
3 Hereinafter called Marathon.

cepted royalty payments under the third paragraph set out above and also sued the Magnolia and National for the conversion of the casing-head gas. Recovery was denied. In its opinion the court said:

"It would appear therefore as practically beyond the realm of serious controversy that an oil well from which gas is produced from any stratum is clearly within the purview of the language of the third clause of the contract in question, and that the obligation of the lessee as contained in said third clause is the contract compensation which the lessors should receive therefor. But the plaintiffs say if this part of the third clause is considered unambiguous, that $50 per year for the gas from each oil well producing gas, under the language of the contract, had in contemplation only gas used 'off' the premises, and that the gas utilized by the defendants was utilized 'on' the premises. This seems to us to be an effort to have the court find there was something in the contract which the parties did not understand to be there. Another clause of the contract provides that the lessee should have free of cost any gas produced for the development and use 'on' the premises. For any gas coming from an oil well and used 'off' the premises, $50 per year was to be paid. The words 'on' and 'off' are correlatives, and to determine what the latter means, might be best reached by a proper conception of what the word 'on' as used in the lease, conveyed. It had no other meaning than used in connection with the development of the premises. The words 'off the premises' had no other meaning to the parties, than if the gas was appropriated to a purpose foreign to utilization for the benefit of development of the property itself. In other words, it did not have particular reference to place where used, but the purpose and objects of its use, to wit, one foreign to the development of the premises in question. If there could be any doubt in regard to this, the record discloses that for a period of 7 years, with the knowledge that the defendants had erected a gasoline condensing plant for making casing-head gasoline out of the gas coming from the oil wells, plaintiffs had accepted the rentals under said obligation 3, and appropriated them to their own use, and if this provision of the contract can with any degree of reason be considered as ambiguous, the interpretation thereof as given, is controlling."

■ In accordance with the doctrine announced in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are compelled to hold that the phrase "used off the premises" in the third paragraph of the royalty provisions of the lease here involved means gas "appropriated to a purpose foreign to utilization" for the development of the lease. Moreover, the gas was used off the premises and the phrase "off the premises" is not limited to use by the lessee. We regard it immaterial whether such use was by the lessee or by a person to whom the lessee sold the gas.

Furthermore, from December 5, 1931, to November 17, 1941, Estella Lackey received and accepted $100 each year as her share of the gas rental for such well. Ohio regularly reported to the Corporation Commission of Oklahoma on prescribed forms the gas produced from such well from January 1, 1932, to April 1, 1942, showing the quantities utilized off the premises and the quantities sold off the premises. As early as March 12, 1936, Estella Lackey knew that large quantities of gas from the well were being sold from the lease. On that date, she wrote Marathon requesting that she be paid on the basis of one-sixteenth of the gas instead of the flat yearly rental. On March 27, 1936, Marathon wrote her that the request could not be granted; that the terms of the lease could not be changed so as to provide for payment for gas on any basis other than the flat yearly rental. After receiving Marathon's letter she continued to accept $100 per year for her share of the gas rental.

■ Where the parties to a contract have given it a practical construction by their conduct, such construction is entitled to great weight in determining its proper interpretation.[4]

The judgment is affirmed.

4 Phillips Petroleum Co. v. Gable, 10 Cir., 128 F.2d 943, 944; Commercial Standard Ins. Co. v. Remer, 10 Cir., 119 F.2d 66, 70; Norton v. Agricultural Bond & Credit Corp., 10 Cir., 92 F.2d 348, 351, certiorari denied 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592; Lawrence National Bank v. Rice, 10 Cir., 82 F.2d 28, 33.